IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

VINCENT WOODHOUSE,

        Plaintiff,

v.                               CIVIL ACTION NO. 7:20cv655

MAJOR KING, *et al.*,

        Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants King, Ely, and Stallard, by counsel, submit the following memorandum in support of their motion for summary judgment.

## PRELIMINARY STATEMENT

Plaintiff, Vincent Woodhouse, #1031027, an inmate within the custody of the Virginia Department of Corrections ("VDOC"), filed this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights under the Eighth Amendment.  Specifically, Woodhouse alleges that Defendants were deliberately indifferent to his safety by failing to protect him from another the other inmate who punched him in the face during pod recreation on August 17, 2020.  For the reasons explained below, Defendants are entitled to judgment as a matter of law with respect to Woodhouse's claim and therefore respectfully request that this Court dismiss the action.

## AFFIDAVITS AND EVIDENCE

Defendants enclose and incorporate by reference:

- Defendants' Exhibit 1, the affidavit of C. King, Major and Chief of Security for Wallens Ridge State Prison ("King Aff.").

- Defendants' Exhibit 2, the affidavit of J. Stallard, Unit Manager of A-Building at Wallens Ridge State Prison ("Stallard Aff.").

- Defendants' Exhibit 3, the affidavit of J. Light, Intel Officer at Wallens Ridge State Prison ("Light Aff."); and

Defendants respectfully request that this Court consider these exhibits as evidence in support of this motion.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff, Vincent Woodhouse, #1031027, is a Virginia Department of Corrections ("VDOC") offender who is presently, and at the time of the filing of this lawsuit was incarcerated at Wallens Ridge State Prison.  Woodhouse was received at WRSP from Red Onion State Prison on November 20, 2018.  Stallard Aff. ¶ 4.

2.      Defendant King is a Major and Chief of Security for WRSP.

3.      Defendant Stallard is the Unit Manager of A-Building at WRSP.

4.      In accordance with established procedures, the Institutional Classification Authority ("ICA") reviews inmates for appropriate security and good time level assignments. The Multi-Disciplinary Team reviews inmate assignments to restrictive housing and makes recommendations for housing status, transfer, security level, good time class, etc.  Final decisions are the responsibilities of the Facility Unit Head and Regional Administrator.  Stallard Aff. ¶ 5, Enclosure A (Operating Procedure ("OP") 830.1, *Facility Classification Management*), and Enclosure B (OP 830.5, *Transfers, Institution Reassignments*).

5.      On June 24, 2020, inmate Woodhouse and inmate A. Phillips were assigned to the same housing unit, A-4 Building.  On that day, an officer observed Woodhouse approach Phillips's cell door and overheard Phillips and Woodhouse in a "heated discussion."  The officer heard Woodhouse say "You're the biggest pussy on the mountain, come out and I'll fuck you up

pussy bitch!", King Aff., Enclosure D, and overheard Phillips state "Don't press up on me or I'll have to teach you some manners!", King Aff., Enclosure C.  As a result of this verbal exchange, Both Woodhouse and Phillips were charged with Threatening Bodily Harm and subsequently found guilty of the charges.  King Aff. ¶ 7, Enclosures C and D.

6.      On June 24, 2020, Woodhouse was temporarily assigned to the Restrictive Housing Unit at WRSP after receiving the institutional disciplinary charge for Threatening Bodily Harm to Any Person. Woodhouse remained in restrictive housing until his release back to his general population cell in A-4 Building on July 8, 2020.  Stallard Aff. ¶ 6, Enclosure C.

7.      Woodhouse and Phillips had resided in the same housing unit without any reported incidents for several months prior to the June 24, 2020 verbal altercation between the two inmates.  King Aff. ¶ 8.  Upon his return to the A-4 housing unit on July 8, 2020, he told both the Lieutenant Fields and Unit Manager Stallard that he had no issues in continuing to be housed in the same pod with inmate Phillips.  Stallard Aff. ¶ 7, Enclosure D; Stallard Aff. ¶ 8, Enclosure E.  There were no incidents from the time Woodhouse was returned to A-Building on July 8, 2020 until August 17, 2020.

8.      On August 17, 2020 during A-4 pod recreation Woodhouse and inmate Phillips were observed having a conversation near the pod showers.  Light Aff., Enclosure A.  Video footage revealed that while engaged in the middle of a conversation, Phillips struck Woodhouse in the face, and then walked away from the area and returned to his cell without further incident. Light Aff., Enclosure A.  As inmate Phillips walked away, Woodhouse, who fell to the floor, quickly returns to his feet, and without alerting security staff, attempts to go inside the shower area to wash his face.  Light Aff., Enclosure A.   A corrections officer conducting rounds during pod recreation noticed Woodhouse come out from the pod shower with blood on his facial area.

Security staff was notified and responded, and after being questioned, Woodhouse advised that he had been struck by inmate Phillips during pod recreation.  King Aff., Enclosure A. Woodhouse was immediately escorted to medical where he received medical treatment.  King Aff. ¶ 5, Enclosure A & B.  Woodhouse was then returned to his assigned cell in housing unit A-4.  King Aff., Enclosure A.

9.      Phillips was escorted to restrictive housing where he was placed in cell D-101 without further incident.  He was charged with a 239b simple assault upon an offender.  King Aff., Enclosure A.

10.      Since the incident on August 17, 2020, Plaintiff and inmate Phillips have never been housed together.  Immediately following the incident on August 17, 2020, Phillips was removed from the housing pod and moved to segregation in D-Building.  Upon returning to general population, Phillips was reassigned to a different housing pod—separate from Woodhouse—in A-Building on August 21, 2020, and then to C-Building on August 24, 2020. On September 2, 2020, inmate Phillips was listed on Woodhouse's "keep separate" list.  Stallard Aff. ¶ 7; King Aff. ¶ 9.  Phillips was transferred to Red Onion State Prison on November 21, 2020 where he presently remains incarcerated.  Stallard Aff. ¶ 9.

11.      All documented enemy situations and keep separate orders are checked before inmates are assigned to a particular cell and housing unit.  Prior to the August 17, 2020 incident, there was no evidence to suggest that Phillips and Woodhouse presented a keep separate situation in accordance with OP 830.6, *Offender Keep Separate Management*.  King Aff. ¶ 8, Enclosure E.  At no time prior to the August 17, 2020 incident did Woodhouse advise and of the defendants or security staff or file any grievances that he felt threatened by inmate Phillips and needed protection or to be house spereately.  VDOC's records do not reveal that Anwar Phillips

4

was in any way involved with Woodhouse's previous interaction with the Bloods gang while

Woodhouse was houses at ROSP.  Defendants had no reason to believe that Phillips was a threat

to Woodhouse prior to August 17, 2020.  King Aff. ¶ 10.

12.     If, at any time, Woodhouse had felt threatened by Phillips or any inmate, all he

needed to do was advise any member of security staff and the matter would have been fully

investigated and appropriate measures taken including a possible housing reassignment or

transfer.  However, not only did Woodhouse never express such concerns, rather to the contrary,

Woodhouse had advised both Unit Manager Stallard and Lieutenant Fields that he had no

problems being housed in the same pod with Phillips on July 8, 2020.  King Aff. ¶ 8.  Enemy

situations are taken very seriously by security staff and had Woodhouse advised any staff

member that he feared for his life due to an enemy situation with inmate Phillips, an appropriate

investigation would have been conducted and a resolution found including possible transfer

and/or assignment to protective custody.  King Aff. ¶ 9.

## ARGUMENT AND AUTHORITIES

### 1.  Standard of Review

A motion for summary judgment is appropriate where "materials in the record" show

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986).  Yet, "the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-

48 (1986).  "The party opposing a properly supported motion for summary judgment may not

rest upon mere allegations or denials of his pleading, but must set forth specific facts showing

that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). The Court should view the evidence and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. When, based on the evidence presented, a fair-minded jury could not reasonably find for the plaintiff, summary judgment is appropriate. *See id.* at 252.

### 2. Eighth Amendment

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). More specifically, it imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833; *see also Odom v. South Carolina Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003). "A prisoner claiming that a prison official failed to keep him safe from other inmates must show that (1) objectively, the prisoner was 'incarcerated under conditions posing a substantial risk of serious harm' and suffered such harm, and (2) subjectively, the official had a 'sufficiently culpable state of mind,' namely, 'deliberate indifference to inmate health or safety.'" *Ford v. Gillenwater*, No. 7:16-cv-00370, 2018 WL 4704063, at *4 (W.D. Va. Sept. 30, 2018) (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).

"[D]eliberate indifference entails more than ordinary lack of due care for the prisoner's interests or safety, and more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Makdessi*, 789 F.3d at 133. Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, "a prison official may be held liable under the Eighth

Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847 (emphasis added).

"A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the 'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Makdessi*, 789 F.3d at (quoting *Farmer*, 511 U.S. at 842 (quotation marks omitted). "Direct evidence of actual knowledge is not required." *Id.* Prison officials may not simply bury their heads in the sand and thereby skirt liability. "[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify 'underlying facts that he strongly suspected to be true,'" or that he "'declined to confirm inferences of risk that he strongly suspected to exist.'" *Makdessi*, 789 F.3d at 134 (quoting *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)).

As an initial matter, Defendants dispute that Woodhouse's medical records support that he sustained a sufficiently serious injury for purposes of the objective prong. But assuming arguendo he could establish a sufficiently serious injury, his claims fail under the subjective analysis.

On August 17, 2020, the Defendants had no information, in advance, tending to indicate that Phillips presented a physical danger to Woodhouse. Woodhouse and Phillips had been housed together for several months without incident. On June 24, 2020, Woodhouse and Phillips had had a short verbal altercation in which neither appeared to be the clear instigator. Upon his

return to the same housing unit on July 8, 2020, Woodhouse informed security staff that he had

no issues of being in the same housing unit as Phillips.  At no time prior to August 17, 2020 did

Woodhouse ever alert any of the defendants, security staff, or file any grievances indicating he

was in fear of inmate Phillips or that he did not want to be in the same housing unit with Phillips.

At no time does Woodhouse allege that Phillips was in anyway connected to a gang affiliation

that might put Woodhouse at risk and VDOC records do not reveal any such affiliation.  The

history between these two inmates, even considering one verbal altercation over a month earlier,

simply does not reflect a "longstanding, pervasive, or well-documented" history of conflict

between Woodhouse and Phillips to put Defendants on notice of a substantial risk to

Woodhouse's safety during pod recreation on August 17, 2020.  *See Farmer*, 511 U.S. at 842.

Furthermore, the video footage from August 17, 2020 contradicts Woodhouse's version of events

and provides no indication that the altercation could have been anticipated.  The video from

August 17, 2020 reveals that Woodhouse and Phillips are engaged in a conversation in the

middle of the pod.  Phillips does not appear to approach Woodhouse in a threatening manner.

Several other inmates stand nearby and do not appear alarmed or give any indication that conflict

exists between Woodhouse and Phillips.  At no time does Woodhouse appear to alert staff he felt

threatened.  Seemingly without advanced notice, Phillips hits Woodhouse in the face and walks

away calmly but swiftly away.  Woodhouse, while having been knocked to the floor, quickly

returns to his feet and without calling for staff or trying to alert staff, turns and quickly walks

away into the pod shower area.[1]  Defendants cannot be liable for failing to prevent an assault that Woodhouse himself appears unable to anticipate, never mind the officers' ability could not reasonably anticipate.  Moreover, once security staff was alerted of the altercation, they intervened as quickly as possible and escorted Woodhouse to medical to receive medical attention as rapidly as possible.  Phillips was immediately escorted to separate housing, listed as a documented enemy of Woodhouse, and has never been housed with Woodhouse after August 17, 2020.

In sum, the Defendants did not believe—and had no reason to believe—that Woodhouse was at any risk of being punched by Phillips on August 20, 2020, and they could not act to alleviate a risk that they had no reason to perceive.  *See Farmer*, 511 U.S. at 844 (recognizing that a deliberate indifference claim cannot succeed where prison officials were unaware of the risk of harm, because "prison officials who lack[] knowledge of a risk cannot be said to have inflicted punishment").  Because "[a]ctual knowledge or awareness on the part of the [prison official] is essential to proof of deliberate indifference," *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995), and because none of these Defendants were actually aware of and then consciously disregarded a substantial risk of harm, Woodhouse's Eighth Amendment claim against these individuals must fail.  As the Supreme Court has explained, "an official's failure to

---

[1] The video footage contradicts Woodhouse's version of events where he claims Phillips "punched [him] in the face repeatedly. . . while he was ;listening to his headphones and drinking coffee," and that he was "knocked unconscious" and when he "regained consciousness [he] was on the floor with blood everywhere."  Compl. ¶ 15, ECF No. 1, p.4.  "When documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment."  *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011); *Springer v. Adams*, No. 7:12-cv-00336, 2013 U.S. Dist. LEXIS 127724, at *25 (W.D. Va. Aug. 16, 2013) ("[W]here the record contains an unchallenged videotape capturing the events in question, the court must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape").

alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  Accordingly, the failure to protect claims against Defendants should be dismissed.  *See Bridges v. Keller*, 519 Fed. Appx. 786, 787-88 (4th Cir. 2013) (affirming dismissal of Eighth Amendment claim under Rule 12(b)(6) where the prisoner's allegations established that, rather than disregarding the prisoner's medical issues, "prison officials were promptly responsive to his complaints"); *Parker v. Maryland*, 413 Fed. App'x 634, 639 (4th Cir. 2011) (affirming grant of summary judgment for corrections officials who failed to prevent an inmate murder, reasoning that the officers had "no notification of any conflict" between the inmates and were unaware that the aggressor "posed a threat" to the deceased inmate, further noting that any failure to "independently access available information" that might have revealed the risk "was, at most, negligent"); *Ruefly v. Landon*, 825 F.2d 792, 794 (4th Cir. 1987) (affirming dismissal of Eighth Amendment claim under Rule 12(b)(6) where the plaintiff's allegations, regarding prison officials' failure to protect from attack by another inmate, did not establish a "specific known risk of harm," and further noting that the plaintiff had, "at most, alleged negligence on the part of the defendants," which "cannot support a claim for a violation of the eighth amendment's cruel and unusual punishments clause"); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (reversing denial of correction officials' motion for summary judgment were "none of the prison officials were aware that [the other inmate] . . . posed a specific risk to [the plaintiff's] safety prior to the [attack]").

### 3.  Any official capacity claims for damages should be dismissed.

Neither a state nor its officials acting in their official capacities are "persons" for purposes of 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

Therefore, to the extent that Woodfhouse is requesting an award of monetary damages against Defendants in their official capacities, such claims should be dismissed.

### 4. Qualified Immunity

With respect to Woodhouse's request for monetary damages against Defendants in their individual capacities, Defendants King, Stallard and Ely are entitled to the defense of qualified immunity, there being no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The purpose of the qualified immunity doctrine is to protect officers in the performance of their duties unless they are "plainly incompetent" or "they knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 342 (1986). When evaluating a claim of qualified immunity, courts must first ascertain "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If so, the second inquiry is whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." *Lopez v. Robinson*, 914 F.2d 486, 489 (4th Cir. 1990); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987); s*ee, e.g.*, *Rountree v. Clarke*, No. 7:11CV00572, 2015 U.S. Dist. LEXIS 28511, at *45-46 (finding defendants were entitled to qualified immunity where the law did not put them on notice that disallowing use of a prayer rug during count would be clearly unlawful).

As explained above, none of the individual defendants violated Woodhouse's constitutional rights. Therefore, Defendants' conduct, did not violate a constitutional right, did not transgress any bright lines, and was not a knowing violation of law. *See Schultz v. Braga*,

455 F.3d 470 (4th Cir. 2006).  Accordingly, because there is no constitutional violation Defendants should be entitled to qualified immunity.

Moreover, even assuming that there might have been some infringement upon Woodhouse's constitutional rights, the unlawfulness of any such action would not be "apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." *Lopez*, 914 F.2d at 489.  Reasonable corrections officials, charged with knowledge of established law, would not believe that any of the challenged conduct would violate an inmate's constitutional rights.  Because none of the conduct described in the Complaint would have placed Defendants King, Stallard, or Ely on notice that they were violating a "clearly established statutory or constitutional right[] of which a reasonable person would have known," *Harlow*, 457 U.S. at 818, Defendants are entitled to qualified immunity, and the claims against them should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter judgment in their favor and dismiss the lawsuit in its entirety.

Respectfully submitted,

MAJOR KING, JOSEPH ELY, and UNIT
MANAGER STALLARD

By:        s/ Laura H. Cahill
Laura H. Cahill, AAG, VSB#86328
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 786-5630
(804) 786-4239 (Fax)
Email:  lcahill@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of June 2021, I electronically filed the foregoing

Memorandum in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the

CM/ECF system, which will send a notification of such filing (NEF) to the following: N/A,

and I hereby certify that I have mailed the document by UPS Ground Service to the following

non-filing user:

    Vincent Woodhouse, # 1031027
    Wallens Ridge State Prison
    272 Dogwood Drive
    Big Stone Gap, VA 24219

        By:        s/ Laura H. Cahill
                Laura H. Cahill, AAG, VSB#86328
                Office of the Attorney General
                Criminal Justice & Public Safety Division
                202 North 9th Street
                Richmond, Virginia 23219
                (804) 786-5630
                (804) 786-4239 (Fax)
                Email:  lcahill@oag.state.va.us