# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

VINCENT WOODHOUSE,

     Plaintiff,

v.                                  CIVIL ACTION NO. 7:20cv655

MAJOR KING, *et al.*,

     Defendants.

## AFFIDAVIT

State of Virginia, County of Wise, to-wit:

     J. STALLARD, first being duly sworn, states as follows:

1.     I am the Unit Manager of A-Building at Wallens Ridge State Prison (WRSP).

2.     I base the information contained in this Affidavit on personal knowledge and records maintained in the regular and ordinary course of business.

3.     I have been informed of this lawsuit filed by inmate Vincent Woodhouse (#1031027) and his allegation that VDOC staff failed to protect him when he was housed with inmate A. Phillips.

4.     Inmate Woodhouse is serving a sentence totaling 22 years and 21 months for convictions including Assaults, Malicious Wounding and Robbery. He was received at WRSP from Red Onion State Prison on November 20, 2018.

5.     In accordance with established procedures, the Institutional Classification Authority (ICA) reviews inmates for appropriate security and good time level assignments. The Multi-Disciplinary Team reviews inmate assignments to restrictive housing and makes

recommendations for housing status, transfer, security level, good time class, etc. Final decisions are the responsibilities of the Facility Unit Head and Regional Administrator. A copy of Virginia Department of Corrections (VDOC) Operating Procedure (OP) 830.1, *Facility Classification Management* and 830.5, *Transfers, Institution Reassignments*, are attached as Enclosures A and B, respectively.

6.      Woodhouse was assigned to the Restrictive Housing Unit at WRSP on June 24, 2020, after receiving an institutional disciplinary charge for Threatening Bodily Harm to Any Person. Woodhouse remained in restrictive housing until his release to a general population cell on July 8, 2020. At that time, he was assigned to A-4 Building. A copy of the relevant ICA Hearing reports is attached as Enclosure C.

7.      On August 18, 2020, an Informal Complaint was received from Woodhouse alleging that prison staff acted with indifference when he was housed in the same general population housing unit with inmate A. Phillips on July 8, 2020. Woodhouse complained that Phillips had threatened bodily harm toward him on June 24, 2020 and that on August 17, 2020, Phillips "sucker punched" him resulting in broken headphones. Woodhouse stated that he wanted his headphones replaced. On August 21, 2020, I responded to the Informal Complaint reminding Woodhouse that upon his arrival in A-4 housing unit on July 8, 2020, he told both the Lieutenant and I that he had no issues in continuing to be housed in the same pod with inmate Phillips. A copy of the Informal Complaint is attached as Enclosure D. Immediately following the incident on August 17, 2020, Phillips was removed from the housing pod and moved to segregation in D-Building. Upon returning to general population, Phillips was reassigned to a different pod in A-Building on August 21, 2020, and to C-Building on August 24, 2020. On September 2, 2020, inmate Phillips was listed on Woodhouse's "keep separate" list.

8.  Woodhouse filed a Regular Grievance (WRSP-20-REG-00356) regarding his complaint. He requested replacement headphones and asked that Phillips be placed on his "keep separate" list. By the time this grievance was received from Woodhouse, Phillips had already been listed on the "keep separate" list. A Level I response was provided on September 30, 2020 and Woodhouse was advised that documented enemy situations are checked before cell assignments are made. Woodhouse was reminded that on July 8, 2020, he advised security staff that he had no issues being housed with inmate Phillips. The grievance was determined unfounded by the Warden and on appeal to the Regional Administrator. A copy of the grievance is attached as Enclosure E.

9.  Enemy situations are taken very seriously by security staff and had Woodhouse advised any of us that he feared for his life due to an enemy situation with inmate Phillips, an appropriate investigation would have been conducted and a resolution found including possible transfer and/or assignment to protective custody. As it was, Phillips was documented as an enemy of Woodhouse as soon as it became known and verified, and Phillips was transferred to Red Onion State Prison on November 21, 2020.

J. STALLARD

_J. Stallard_
Affiant

Sworn and subscribed to before me, a Notary Public, in and for the State of Virginia, County of Wise, this 4th day of June 2021.

_S. A. Caughron_
Notary Public

My commission expires: 01-31-2024

| | Operating Procedure | Effective Date June 1, 2017 | Number 830.1 |
|---|---|---|---|
| | | Amended 9/13/17, 10/25/17, 1/16/18, 8/1/18, 7/1/19, 10/1/19 | Operating Level Department |
| | | Supersedes Operating Procedure 830.1 (6/1/14) | |
| | | Authority COV §53.1-32.1 | |

| Subject INSTITUTION CLASSIFICATION MANAGEMENT | ACA/PREA Standards 5-ACI-4A-08, 5-ACI-4B-09, 5-ACI-5B-06, 5-ACI-5B-07, 5-ACI-5B-08, 5-ACI-5B-09; 4-4254, 4-4300, 4-4301, 4-4302, 4-4303; 2-CO-1E-09, 2-CO-4B-03 |
|---|---|

| Incarcerated Offender Access Yes ☒  No ☐ | Public Access Yes ☒  No ☐ Attachments Yes ☐  No ☒ | Office of Primary Responsibility Director of Offender Management Services |
|---|---|---|

## I. PURPOSE

This operating procedure provides for the organization, function, and management of offender classification in Department of Corrections institutions.

## II. COMPLIANCE

This operating procedure applies to all units operated by the Department of Corrections (DOC). Practices and procedures shall comply with applicable State and Federal laws and regulations, Board of Corrections policies and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

## III. DEFINITIONS

**Annual Review** - A uniform yearly review of an offender's classification, needs, and objectives; the Initial Classification Date (ICD) is used to establish the review date for an offender received on or after February 1, 2006. The Custody Responsibility Date (CRD) is used to establish the review date for an offender received prior to February 1, 2006.

**Central Classification Services (CCS)** - Staff members from the Offender Management Services Unit who review certain recommendations made by the Institutional Classification Authority and Multi-Disciplinary Team (MDT) and to render a final decision regarding offender status and assignments (changed 10/1/19)

**Classification** - A process for determining the needs and requirements of offenders; this is an ongoing process that attempts to utilize all relevant information concerning the offender to identify and analyze individual strengths and weaknesses, address individual needs, and encourage proper adjustment to the prison setting and ultimately free society.

**COMPAS (Correctional Offender Management Profiling for Alternative Sanctions)** - The DOC approved risk/needs assessment which consists of different versions for community corrections and institutions; COMPAS is a support system for supervision and case-management decisions, a database used in combination with VACORIS, a tool that assesses two critical risks - violence and recidivism and a tool for determining the criminogenic needs that are used to develop case plans and set programing.

**Formal Due Process Hearing** - A classification hearing that requires a prior formal notification to the offender indicating the reason for, purpose of, and possible results of the classification hearing, the offender's right to be present at the hearing, and notice of the results of the hearing and the reason for the decision. A formal due process hearing is required when an offender is considered for removal from general population, or faces the possibility of increase in security level or reduction in good time earning level outside the Annual Review Cycle.

**Formal Notification** - The institution is required to provide, at a minimum, 48 hour written notification to the offender of a scheduled formal due process hearing using the *Institutional Classification Authority Hearing Notification* generated in VACORIS.

**ICA Hearing** - An offender case review conducted by the Institutional Classification Authority or Multi-

**ENCLOSURE A**

Disciplinary Team; these hearings may be either formal due process, or informal hearings depending on the purpose of the review. (added 10/1/19)

**Informal Hearing** - A classification hearing which does not require advance notification to the offender of the hearing except for involuntary removals from a job or program assignment

**Initial Classification Date (ICD)** - The date on which the offender was initially assigned to a Security Level

**Institutional Classification Authority (ICA)** - The institution staff person designated to conduct offender case review hearings

**Multi-Disciplinary Team (MDT)** - MDT members are responsible to review individual offenders related to restrictive housing and step-down statuses and act as the Institutional Classification Authority to make recommendations for housing status, transfer, security level, good time class, etc.; decisions are the responsibilities of the Facility Unit Head and Regional Administrator. (added 10/1/19)

**Program Assignment Reviewer (PAR)** - The institution staff person designated to conduct informal offender case review hearings such as outside work classification, job assignments/removals, academic/vocational assignments/removals, and assignments/removals from treatment programs.

**VACORIS** - The computer-based Virginia Department of Corrections offender information management system

IV. PROCEDURE

    A. Institutional Classification

        1. Offender Classification

            a. This operating procedure provides for a classification review and appeal process for offenders in DOC institutions. (2-CO-4B-03)

            b. Institutional Classification Authority (ICA), Multi-Disciplinary Team (MDT), and Program Assignment Reviewer (PAR) hearing actions and administrative reviews shall be documented in VACORIS with paper documents generated only as needed for offender signatures and to provide notice or copies to offenders of classification actions. (added 10/1/19)

        2. Institutional Classification Authority (ICA) Hearings

            a. An ICA hearing is required for the below listed actions and may be either a formal due process hearing or an informal hearing depending on the purpose of the hearing. A formal due process hearing is required for administrative and interim reviews whenever there is the opportunity for the offender to be removed from general population status, a reduction in good time earning level, increase in security level, or a loss of liberty is involved. The offender's needs (i.e., security, programs, etc.) should be addressed during the hearing.

            b. Types of hearings:

                i. Annual Reviews will be conducted utilizing the Initial Classification Date (ICD) or the Custody Responsibility Date (CRD), as applicable. (5-ACI-5B-06; 4-4300)

                   (a) The Annual Review should be conducted within 30 days after the *Annual Review Date* provided on the offender's *Home Page* in VACORIS.

                   (b) The review requires an updated Home Plan, Employment Plan, Re-entry Timeline, Re-entry Case Plan, Emergency Contact and Next of Kin Notification using *Emergency Notification Information* 050_F11, Family Environmental Information, COMPAS Re-entry assessment and a complete assessment of each component of the offender's institutional status. (added 8/1/18)

                   (c) Due to the routine nature of Annual Reviews, due process is not required, but the offender should be allowed to be present and have input in the process.

                   (d) Factors to be addressed: (counselors must ensure all offender record information is current and accurate) (2-CO-1E-09)

                      • Security Level (see Operating Procedure 830.2, *Security Level Classification*)

- Institution Assignment (including assignment to the appropriate re-entry site for offenders within the established time period)
- GCA/ESC Class Level (see Operating Procedure 830.3, *Good Time Awards*)
- COMPAS Re-entry Assessment
- Re-entry Case Plan
- Offender Re-entry Timeline
- Any other decisions affecting the offender

ii. Annual Reviews for contract offenders (i.e. Virgin Islands, Hawaii) will be conducted utilizing the date the offender was received into the Virginia DOC. (5-ACI-5B-06; 4-4300)

   (a) The annual review should be conducted within 30 days after the *Annual Review Date* provided in VACORIS ~~by the Manager of Central Classification Services~~. (changed 8/1/18)

   (b) The review requires an updated Home Plan, Re-entry Timeline, Re-entry Case Plan, Emergency Contact and Next of Kin Notification using *Emergency Notification Information* 050_F11, Family Environmental Information, COMPAS re-entry assessment and a complete assessment of each component of the offender's institution status to include: (added 8/1/18)
   - Infraction History
   - Program Participation
   - Academic and Career and Technical Education Programs Participation
   - Institutional Employment History

   (c) Due to the routine nature of annual reviews, due process is not required, but the offender should be allowed to be present and have input in the process.

   (d) Factors to be addressed: (counselors must ensure all offender record information is current and accurate) (2-CO-1E-09)
   - Security Level (Security Level Scoresheet for informational purposes only, do not complete the process and change the offenders Security Level in VACORIS)
   - Institution Assignment (Red Onion State Prison, Wallens Ridge State Prison, or Keen Mountain Correctional Center, only)
   - Class Level (Class Level Scoresheet, for informational purposes only, do not complete the process and change the offenders Class Level in VACORIS); CCS must be notified of all Loss of Good Time penalties imposed for a disciplinary conviction. (added 8/1/18)
   - COMPAS reentry assessment
   - Re-entry Case Plan
   - Offender Re-entry Timeline
   - Any other decisions affecting the offender

   (e) The *Reclassification Score Sheet (DOC 11B) Worksheet* (Attachment 1 to Operating Procedure 830.2, *Security Level Classification*) and the *Class Level Evaluation* (Attachment 1 to Operating Procedure 830.3, *Good Time Awards*) may be completed and uploaded as an~~d~~ External Document in lieu of completing these documents in VACORIS. (changed 10/1/19)

   (f) Contract offenders in general population may request a transfer during their annual review to Red Onion State Prison, Wallens Ridge State Prison, or Keen Mountain Correctional Center if they are eligible and meet the *Institutional Assignment Criteria* (see Operating Procedure 830.5, *Transfers, Institution Reassignments* ~~830.2, Security Level Classification~~) (changed 8/1/18)

   (g) Contract offenders assigned to the Step Down Program ~~at Red Onion State Prison and Wallens Ridge State Prison~~ are required to complete the requirements of the program prior to transfer to lower security institutions. (changed 1/16/18)

   (h) Contract offenders will not be transferred for Re-entry services, necessary services will be provided at the assigned institution. (added 10/1/19)

iii. Formal Due Process Hearings require the use of the *Institutional Classification Authority Hearing Notification* with actions documented on an *Institutional Classification Authority*

*Hearing* report.  Examples of formal due process hearings:
(a) Transfer for security reasons; transfers to a permanent protective custody unit
(b) Decrease in GCA/ESC earning level (Interim Review)
(c) Security Level increase (Interim Review)
(d) ~~Pre-Hearing Detention assignment for institutions not operating under Restrictive Housing~~ (added 8/1/18, deleted 10/1/19)
(e) Segregation assignment, review and release (5-ACI-4A-08; 4-4254) ~~for institutions not operating under Restrictive Housing~~ (added 8/1/18, deleted 10/1/19)
(f) Segregation reviews resulting in no status change ~~for institutions not operating under Restrictive Housing~~ (added 8/1/18, deleted 10/1/19)
(g) ~~Common Fare diet suspensions and removals~~ (added 10/25/17, deleted 8/1/18)
(h) Work Release removals
(i) Assignments and removals from Cognitive Therapeutic Community Programs (see Operating Procedure 830.5, *Transfers, Institution Reassignments*)
(j) Administrative Hearings i.e., offender's refusal of an off-site specialist appointment, diagnostic procedure, or treatment procedure (see Operating Procedure 720.4, *Co-Payment for Health Care Services*)
(k) Removals from Re-entry Programs
(l) Restrictive Housing Unit Assignments and Removals (5-ACI-4B-09) (added 1/16/18)
(m) Assignments to *Steps to Achieve Reintegration (STAR) Program* (added 1/16/18)
(n) ~~Assignments and removals from the *Grooming Standards Violator Housing Unit (VHU)*~~ (added 1/16/18, deleted 7/1/19)
(o) Assignments and removals from the *Shared Allied Management (SAM) Unit* that require an institutional transfer (added 1/16/18)
(p) Assignments and removals from the *Secure Diversionary Treatment Program (SDTP)* (added 1/16/18)

iv. Informal Hearing actions are documented on an *Institutional Classification Authority Hearing* report.  Examples of informal hearings:
(a) Offender requested transfer during the Annual Review Cycle
(b) EGT awards
(c) Assignments to Work Release Program
(d) Offender requested assignment and removal from ~~to~~ Common Fare - (Note: Offender must be present at ICA review) (see Operating Procedure 841.3, *Offender Religious Programs*). (changed 8/1/18)
(e) "Keep Separate" designation (see Operating Procedure 830.6, *Offender Keep Separate Management*)
(f) Removals from the *Steps to Achieve Reintegration (STAR) Program* (added 1/16/18)
(g) Assignments and removals from the *Shared Allied Management (SAM) Unit* that do not require a transfer (added 1/16/18)
(h) Initial Classification Actions (added 10/1/19)

c. Referrals for ICA hearings may be made by any of the following persons:
   i. Facility Unit Head, Assistant Facility Unit Head or designee
   ii. Chiefs of Security, Chiefs of Housing and Programs, Unit Managers, Officer-In-Charge
   iii. Hearings Officer (when based on disciplinary reports)
   iv. Institutional Program Managers, Counselors, Medical or Mental Health Staff
   v. Director
   vi. Chief of Corrections Operations
   vii. Regional Operations Chief
   viii. Regional Administrator
   ix. Director of Offender Management Services or designee
   x. Central Classification Services

3. Appointment of the Institutional Classification Authority (ICA)/Multi-Disciplinary Team (MDT): (added 10/1/19)

     a. The ICA is an institution employee who has contact with the offender, but who is impartial to the offender being presented for review.

       i. The ICA is an experienced senior staff member who will be appointed by the Facility Unit Head. This person must be in Pay Band 4 or above, preferably functioning in a supervisory status.

       ii. An institution may choose to utilize a committee for ICA hearings.

       iii. If a committee is used, the chairperson must meet the criteria above.

     b. The MDT is comprised of three or more staff members responsible for conducting ICA hearings for offender assigned to restrictive housing units. Staff member assignment to an MDT will be in accordance with Operating Procedure 425.4, *Management of Bed and Cell Assignments (Restricted).* (added 10/1/19)

4. Responsibilities of the Institutional Classification Authority, Multi-Disciplinary Team, and the other participants during the ICA Hearing: (added 10/1/19)

     a. Institutional Classification Authority/Multi-Disciplinary Team (added 10/1/19)

       i. Ensures that there is a docketing procedure that provides for all cases being heard within applicable time limits

       ii. Ensures that all cases heard are documented in VACORIS

       iii. Ensures that the ICA hearing is conducted properly and in compliance with all established procedures

       iv. Moderates questions and comments at the hearing to ensure that all persons, including offenders, have an opportunity to be heard and guides the process to reach a decision

       v. Determines whether witnesses have relevant testimony

       vi. Ensures the hearing is orderly, and may have anyone who attempts to disrupt the hearing removed

       vii. Makes a recommendation based only on the facts presented at the hearing and review of the offender's record, and ensures that the decision is fair and impartial

     b. Reporting Officer (Formal due process hearing, if required) - Becomes familiar with all facts relevant to the case prior to the hearing, presents all the facts and responds to questions relevant to the case during the hearing and in the presence of the offender.

     c. Counselor

       i. Ensures the offender understands the reasons for, purpose of, and possible results of the hearing

       ii. Ensures the offender is eligible for the type of review scheduled

       iii. Ensures that the offender understands the procedure of the ICA hearing (i.e. organization, procedural requirements, etc.)

       iv. Be present for ICA hearings to present to the ICA/MDT additional, relevant facts, alternative solutions, or courses of action (added 10/1/19)

     d. Witnesses - (Formal due process hearing, if required)

       i. Responsible for presenting relevant facts pertinent to the case

       ii. Answers questions from the ICA/MDT members and offender relative to the given testimony (added 10/1/19)

       iii. Any witness for the offender who does not wish to testify should submit a written statement to that effect.

       iv. Confidential offender witnesses shall not be required to appear before the ICA/MDT. (added 10/1/19)

         (a) Testimony may be presented to the ICA/MDT by a reporting officer in the presence of the offender.

         (b) The confidentiality of the names of those offenders providing testimony may be maintained for security reasons.

         (c) Information received from confidential sources should be written either by the informant or

the officer who presents the information.

    (d) Information received from a specific informant should be verified and the reliability of the informant established.

    v. Offender witnesses appearing before the ICA/MDT are doing so on a strictly voluntary basis, and cannot be forced to present any information. The ICA/MDT will determine whether the information presented by the offender is relevant to the hearing. (added 10/1/19)

    vi. The ICA/MDT may choose not to call witnesses to appear at the hearing if their testimony is irrelevant or repetitious. (added 10/1/19)

    vii. Employees requested as offender witnesses must state, in writing, what testimony they could give at the ICA hearing and submit their statements to the ICA/MDT. If the ICA/MDT determines their testimony is relevant, the statement may be used for hearing or the employee's presence may be required at the hearing as deemed appropriate by the ICA/MDT. (added 10/1/19)

B. Institutional Classification Authority Hearing Procedural Requirements

  1. Formal Due Process Hearings

    a. The *Institutional Classification Authority Hearing Notification* generated in VACORIS will be used for all formal ICA hearings to ensure that the offender receives due process.

    b. Referral and Prior Notification - The *Notification* will be served on the offender at least 48 hours in advance of the scheduled hearing and uploaded in VACORIS; the offender may waive the 48-hour notice in writing. (5-ACI-5B-08; 4-4302)

    c. The offender will be advised that they will be permitted to:

      i. Be present at the hearing

      ii. Remain silent

      iii. Have a counselor or other employee present to advise

      iv. Hear the testimony or statement of the reporting officer (a signed, notarized statement from the reporting officer will suffice if the person is legitimately unable to attend the hearing)

      v. Call and question witnesses

      vi. Be advised verbally at the hearing and in writing within five working days of the ICA's/MDT's recommendation and reason for the decision (added 10/1/19)

      vii. Receive a copy of action of the final approving authority

      viii. Access the Offender Grievance Procedure (Operating Procedure 866.1, *Offender Grievance Procedure*) to appeal all classification decisions

    d. The rights to hear the reporting officer's statement and to call and question witnesses do not apply in the following cases:

      i. ~~Pre-hearing detention when a disciplinary offense has been served~~ (deleted 10/1/19)

      ii. Hearings based on a documented disciplinary conviction

      iii. Hearings based on criminal convictions

      iv. Initial review of an offender's detention status based on their claim of a keep separate situation, pending outcome of the investigation

    e. Interim reviews of on-going segregation assignments do not require the presence of a reporting officer or the right to call witnesses.

    f. The person serving the *Notification* will record the names of any requested witnesses, indicate if the offender has waived the 48 hour notice, have the offender sign, witness the offender's signature, and provide a copy to the offender. If the offender refuses to sign the notice, the person serving the notice will so note and sign as witness.

    g. At the start of the hearing, the ICA/MDT will determine that the offender received advance formal notification or waived such notification in writing and understands the reason for the hearing and all procedural requirements. The ICA/MDT will conduct the hearing in accordance with this operating procedure. Upon conclusion of the hearing, the ICA/MDT will inform the offender of their ~~ICA's~~ recommendation and reasons for the recommendation. (changed 10/1/19)

    h. Designated staff will complete hearing documentation in VACORIS, specifying the statements of the reporting officer, the offender, and any witnesses, the ICA's/MDT's recommendation, and the reasons for the recommendation. The ICA or a member of the MDT as applicable will escalate the hearing for review as necessary. The offender should receive a copy of the *Institutional Classification Authority Hearing* report within five working days of the hearing. (added 10/1/19)

    i. Upon final action by the appropriate approving authority, a copy of the *Institutional Classification Authority Hearing* report reflecting the ICA's/MDT's recommendation, and the final decision by the appropriate approving authority will be provided to the offender along with any relevant evaluation reports. If the approving authority disapproves or modifies the ICA/MDT decision, documentation of the action should be noted in VACORIS. (added 10/1/19)

2. Informal Hearing Requirements

    a. Although prior notification of the offender is not required, it is generally preferable to advise the offender in advance of the nature of the hearing. If the offender desires to be present, the ICA/MDT may permit the offender to be present if deemed appropriate and necessary. (added 10/1/19)

    b. If the offender is present at the hearing, the ICA/MDT should inform the offender of the decision or recommendation at that time. If the offender is not present, the offender should be advised of the decision in writing within five working days using the *Institutional Classification Authority Hearing* report. (added 10/1/19)

    c. Upon final action by the appropriate approving authority, a copy of the *Institutional Classification Authority Hearing* report reflecting the ICA's/MDT's recommendation and the final decision by the approving authority will be provided to the offender. (added 10/1/19)

3. Annual Review Hearing Requirements

    a. Formal Due Process is not required for an increase in an offender's Security Level or GCA/ESC Class Level during a general population offender's Annual Review. Such reviews are considered routine and afforded every offender; however, the offender should be allowed to be present and permitted input during the review process and receive a copy of the outcome of the review. Each component of the Annual Review may be appealed through the Offender Grievance Procedure. (5-ACI-5B-07; 4-4301)

    b. The Annual Review shall be documented in VACORIS.

    c. Offenders requesting transfer during their Annual Review Cycle should meet the criteria in Operating Procedure 830.5, *Transfers, Institution Reassignments*, before being recommended by the institution. Such recommendation does not require due process.

    d. CCS may administratively review the offender population for security level reductions to maximize the efficient use of available bed space.

    e. Facility Unit Heads may be requested to review the offender population and make recommendations for security level reductions. An interim review will not change the next Annual Review date. The reason for the review should be selected in the *Classification Action Type* section of VACORIS.

4. Following the ICA hearing, the ICA/MDT will escalate the hearing for appropriate review and approvals. (added 10/1/19)

C. Review of Institutional Classification Authority/Multi-Disciplinary Team Recommendations (added 10/1/19)

1. The Facility Unit Head, Assistant Facility Unit Head, or their designee will ensure all information is properly entered in VACORIS.

2. The Facility Unit Head or designee will review each ICA/MDT action as required and will indicate approval/disapproval of the ICA's/MDT's recommendation.

    a. The Facility Unit Head, Assistant Facility Unit Head, or their designee cannot review cases for which they served as the ICA/MDT chairperson.

b. Cases may be disapproved and returned to the ICA/MDT for additional information.

3. For segregation reviews for which no status change has been recommended, the Facility Unit Head or designee will indicate approval/disapproval of the ICA's/MDT's recommendation, note that no change has been recommended, and provide any comments.

4. The Facility Unit Head or designee will indicate specific reasons for the decision in the respective narrative fields.

5. The levels of final approval/disapproval authority for classification decisions are listed below:

a. The Facility Unit Head or designee is the final authority for approving/disapproving the following ICA/MDT actions:

   i. All GCA and ESC Class Level change and EGT recommendations

   ii. Security Level changes as follows:

   (a) No change in Security Level when score is in the assigned level i.e., offender is Security Level 4 and scores 28 points which is in the SL 4 range. The institution determines the offender will remain SL 4.

   (b) No change in Security Level with one level override i.e., offender is Security Level 3 and scores 15 points which is in the SL 2 range. The institution determines the offender will remain in SL 3 utilizing a one level override.

   (c) Security Level decrease with one level override i.e., offender is Security Level 3 and scores 9 points which is in the SL 1 range. The institution determines the offender will be decreased to SL 2 with a one level override.

   (d) Security Level increase with one level override i.e., offender is Security Level 4 and scores 30 points which is in the SL 4 range. The institution determines the offender will be increased to SL 5 with a one level override.

   iii. ~~Pre-hearing Detention assignments, removals~~ (deleted 10/1/19)

   iv. Segregation assignments, reviews and removals

   v. Common Fare assignments~~, suspensions~~ and offender requested removals (added 1/16/18, changed 8/1/18)

   vi. Assignment to the *Shared Allied Management (SAM) Unit* (added 1/16/18)

b. The Regional Administrator, upon referral from the Facility Unit Head or designee has final authority for approving/disapproving community activities and intra-regional transfers as defined in Operating Procedure 830.5, *Transfers, Institution Reassignments*.

c. Chief of Corrections Operations or designee approval is needed for Interstate Compact transfer (see Operating Procedure 020.2, *Compact for Interstate Transfer of Incarcerated Offenders*)

d. Upon referral by the Regional Administrator and the Chief of Corrections Operations, the Director is the final and sole authority for approval of Restoration of Lost Good Time requests.

e. Actions Requiring CCS Approval: Central Classification Services, upon referral by the Facility Unit Head or designee has final authority for approval/disapproval of the following:

   i. No change in Security Level with a two level override i.e., offender is SL 4 and scores 14 points which is in the SL 2 range. The institution recommends remain SL 4 with a two level override

   ii. Security Level Assignments with an H-7 override

   iii. Any override of mandatory restrictors or offender assignment criteria

   iv. Reclassification assignments to Security Level W (added 9/13/17)

   v. ~~Initial and~~ Reclassification assignments to work centers (deleted 9/13/17)

   vi. Assignments to the *Steps to Achieve Reintegration (STAR) Program* which are escalated by CCS to the designated Facility Unit Head or designee, and Regional Operations Chief in accordance with Operating Procedure 830.5, *Transfers, Institution Reassignments*

   vii. Assignments into Security Level S which are escalated by CCS to the designated Facility Unit Head or designee, and Regional Operations Chief in accordance with Operating Procedure 830.5, *Transfer, Institution Reassignments*

viii. ~~Assignments to the Grooming Standards Violator Housing Unit (VHU) which are escalated by CCS to the designated Facility Unit Head or designee, and Regional Operations Chief in accordance with Operating Procedure 830.5,~~ *~~Transfer, Institution Reassignments~~* (deleted 7/1/19)

ix. All transfers, except intra-regional, as defined in Operating Procedure 830.5, *Transfers, Institution Reassignments*, including administrative/security, offender request, and assignment to Protective Custody units

x. Keep Separate approvals and removals

xi. All work release recommendation (assignments/removals)

xii. Assignments to the *Shared Allied Management (SAM) Unit* which are escalated by Psychology Associate Senior at CCS to the designated Facility Unit Head or designee in accordance with Operating Procedure 830.5, *Transfer, Institution Reassignments* (added 1/16/18)

xiii. Assignments to the *Secure Diversionary Treatment Program (SDTP)* which are reviewed by the Regional Operations Chief of the Western Region and the *Multi-Institution Treatment Team (MITT)* and are escalated to the Psychology Associate Senior at CCS in accordance with Operating Procedure 830.5, *Transfers, Institution Reassignments* (added 1/16/18)

6. When the final level of approval has acted on the classification action, the Facility Unit Head, or designee, will ensure that all classification actions are properly documented in VACORIS, and that the offender receives a copy of appropriate classification documents on which the final approval authority's decision has been recorded in accordance with this operating procedure and the appropriate procedure governing the classification action involved.

D. Program Assignment Reviews

1. Classification actions, which require Program Assignment Reviews only:

   a. Outside work classification and reclassification

   b. Job assignments and removals, including outside perimeter assignments (see Operating Procedure 841.2, *Offender Work Programs*)

   c. Treatment Program assignments and removals (except SORT and Cognitive Therapeutic Community Programs), Academic/Vocational assignments and removals, Re-Entry Case Plan reviews

2. Appointment of the Program Assignment Reviewer - The Facility Unit Head will designate at least one staff member who is impartial regarding the classification matter and the case being reviewed to serve as the Program Assignment Reviewer (PAR). This employee must be Pay Band 4 or above.

3. Responsibilities of the Program Assignment Review Participants:

   a. Program Assignment Reviewer (PAR)

      i. Ensures there is a docketing procedure that provides that all cases are eligible for review and are heard within applicable time limits

      ii. Ensures that a hearing docket is maintained

      iii. Ensures the review is conducted in compliance with established procedures, reviews, and rules on offender requests to attend the review

      iv. Reviews the offender's record and all documentation submitted for the review, and may ask questions of all persons present during the hearing in order to assist in making a recommendation in the case

      v. Considers COMPAS needs scores for counseling service program assignments

      vi. Ensure all recommendations are fair and impartial, and based upon the facts presented

   b. Counselor - Ensures the offender is eligible for the type of review requested and action recommended. The counselor should advise the offender prior to the hearing of the reasons for, purpose of, and possible results of the hearing, and of the offender's opportunity to request to attend the hearing. The counselor presents relevant facts, and may recommend alternative courses of action at the review.

   c. Offender - The offender is not required to attend a Program Assignment Review Hearing. If an

offender wishes to attend, they should verbally or in writing notify the counselor prior to the scheduled hearing. The decision of whether to allow the offender to attend rests with the PAR.

4. Program Assignment Review Hearing Requirements:

   a. Each institution may maintain a Classification Hearing Docket to document cases reviewed as specified in this operating procedure.

      i. *Classification Hearing Docket DOC-11F* 830_F1 is provided as a model, but each institution is encouraged to modify and develop a *Classification Hearing Docket* to meet institutional needs. Individual offender notification of PAR actions may be accomplished using forms developed by the institution.

      ii. For job assignment actions, the *Facility Job Assignment Docket* 841_F6 and the *Offender Work Program Job Application* 841_F5 should be used.

      iii. In Restrictive Housing Units, the *Multi-Disciplinary Team Hearing Docket* we be utilized to document cases reviewed. (See Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted)) (added 10/1/19)

   b. Program Assignment Review Hearings are informal hearings.

      i. The offender should be made aware of the purpose of the hearing, but advance notification is not required.

      ii. If the offender desires to be present, the PAR may permit the offender to be present.

   c. When the review concerns the involuntary removal of the offender from a job, educational, or program assignment, there should be a written or verbal statement from the person requesting the removal that provides the reason for the removal, and the offender should be provided the opportunity to be present and make a statement.

   d. If the offender is present at the hearing, the PAR should inform the offender of the decision or recommendation at that time. Offenders that are not present should be advised of the decision either verbally or in writing.

   e. Upon final action by the appropriate approving authority, the action should be entered into VACORIS; a copy of the appropriate review form reflecting the PAR's recommendation and the final decision by the appropriate approving authority will be provided to the offender.

5. Approval of Program Assignment Reviews:

   a. All PAR hearings are reviewed and acted on by a staff person as designated below, who will approve, disapprove or "no action" the case. No Action cases should be remanded to the Assistant Superintendent/Institutional Program Manager for further review. Comments and reasons for all disapprovals will be documented on the respective forms. The Facility Unit Head or designee will ensure copies of all classification paperwork are distributed.

   b. The Facility Unit Head is the sole and final authority for approving/disapproving PAR recommendation for outside work assignments and must personally approve all work assignments outside the perimeter (may only be delegated to Assistant Facility Unit Head for Work Centers). (see Operating Procedure 841.2, *Offender Work Programs*)

   c. PAR recommendation for work assignments inside the designated security perimeter but outside the housing unit must be approved by the Chief of Security.

   d. The Facility Unit Head may designate one or more supervisory staff to be the final authority for approving/disapproving all other PAR work assignment recommendations. This designated staff person will not be the same individual who served as the PAR for the case being acted upon.

E. Offender Initiated Review of Progress (5-ACI-5B-09; 4-4303)

   1. It is the responsibility of the offender to initiate the request for an Interim Review by completing an offender request identifying exactly why an interim review is warranted.

   2. The counselor should make a recommendation and give justification to support their recommendation and forward the request to the ICA/MDT for consideration. (added 10/1/19)

3. The recommendations for an Interim Review should generally be based on the following criteria:

    a. Confirmed procedural errors in the previous Annual Review

    b. An erroneous calculation of the offender's security level and/or good time award scores

    c. Status change resulting from an expunged institutional infraction, detainer, or other administrative action

    d. Completion of programmatic activities of long standing duration (i.e. offender receives GED after repeated attempts)

F. CCS Authority

In circumstances in which it is deemed necessary for the well-being of the DOC, offenders may be administratively approved for security level changes and/or institution reassignment by Central Classification Services based on appropriate consideration in the absence of a PAR, MDT, or ICA hearing. (added 10/1/19)

G. Appeal Process

1. The Facility Unit Head or designee may appeal CCS decisions to the Director of Offender Management Services by submitting an appeal electronically or in writing, including specific, detailed justification as to why CCS's decision should be amended.

2. All classification decisions may be appealed through the *Offender Grievance Procedure*. The Director of Offender Management Services is the appellate authority for all classification decisions.

## V. REFERENCES

Operating Procedure 020.2, *Compact for Interstate Transfer of Incarcerated Offenders*

Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted) (added 10/1/19)

Operating Procedure 720.4, *Co-Payment for Health Care Services*

Operating Procedure 830.2, *Security Level Classification*

Operating Procedure 830.3, *Good Time Awards*

Operating Procedure 830.5, *Transfers, Institution Reassignments*

Operating Procedure 830.6, *Offender Keep Separate Management*

Operating Procedure 841.2, *Offender Work Programs*

Operating Procedure 841.3, *Offender Religious Programs*

Operating Procedure 866.1, *Offender Grievance Procedure*

## VI. FORM CITATIONS

*Emergency Notification Information* 050_F11 (added 8/1/18)

*Classification Hearing Docket DOC-11F* 830_F1

*Offender Work Program Job Application* 841_F5

*Facility Job Assignment Docket* 841_F6

## VII. REVIEW DATE

The office of primary responsibility shall review this operating procedure annually and re-write it no later than three years after the effective date.

*The office of primary responsibility reviewed this operating procedure in June 2018 and no changes are needed at this time.*

*The office of primary responsibility reviewed this operating procedure in June 2019 and necessary changes are being drafted.*

*Signature Copy on File*                    *4/28/17*

A. David Robinson, Chief of Corrections Operations          Date

| | | Effective Date | | Number |
|---|---|---|---|---|
| | Operating Procedure | March 1, 2017 | | 830.5 |
| | | **Amended** | | **Operating Level** |
| | | 5/8/17, 1/16/18, 2/8/18, 3/2/18, 8/1/18, 10/1/18, 5/1/19, 7/1/19, 8/1/19, 12/1/19, 2/11/20, 4/1/20 | | Department |
| | | **Supersedes** | | |
| | | Operating Procedure 830.5 (11/1/14) | | |
| | | **Authority** | | |
| | | COV §53.1-21 | | |
| **Subject** | | **ACA/PREA Standards** | | |
| **TRANSFERS, INSTITUTION REASSIGNMENTS** | | 5-ACI-5F-03; 4-4444; 4-ACRS-5A-06; 4-ACRS-5A-14; 4-APPFS-2C-04; §115.42, §115.43, §115.68 | | |
| **Incarcerated Offender Access** Yes ☒  No ☐ | **Public Access** Yes ☒  No ☐ **Attachments** Yes ☒ #2 3 No ☐ 4 | **Office of Primary Responsibility** Director of Offender Management Services | | |

## I. PURPOSE

This operating procedure governs offender requests for and management of offender transfers and reassignments for offenders incarcerated in Department of Corrections institutions.

## II. COMPLIANCE

This operating procedure applies to all units operated by the Department of Corrections (DOC). Practices and procedures shall comply with applicable State and Federal laws and regulations, Board of Corrections policies and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

## III. DEFINITIONS

**Annual Review** - A uniform yearly review of an offender's classification, needs, and objectives; the Initial Classification Date (ICD) is used to establish the review date for an offender received on or after February 1, 2006. The Custody Responsibility Date (CRD) is used to establish the review date for an offender received prior to February 1, 2006.

**Behavioral Correction Program (BCP)** - Requires a court referral to CCS prior to sentencing, is a specific sentence into CTC that allows for the potential of sentence suspension and release on Probation after an offender's successful completion of a minimum of 24 months in CTC. (added 5/1/19)

**Central Classification Services (CCS)** - Staff members from the Offender Management Services Unit who review certain recommendations made by the Institutional Classification Authority and Multi-Disciplinary Team (MDT) to render a final decision regarding offender status and assignments (added 1/16/18)

**Cognitive Therapeutic Community (CTC)** - A structured, residential substance abuse treatment program that incorporates cognitive and behavioral programming to aid in the recovery from alcohol and other drug addictions

**Detainer** - Any form of legal hold placed on an offender by another jurisdiction, where the effect is that an offender will not be released upon completion of confinement, because that jurisdiction intends to take physical custody of the offender. A legal hold may be filed by federal, state, or local authorities and shall include: *Detainers* for arraignment or prosecution of untried charges; *Judgment & Commitment Orders* for an un-served sentence; *Non-Detainer Holds* to serve the balance of a sentence subsequent to escape, or revocation of parole/probation; or any form of *Notify or Hold Request* filed by the U.S. Immigration & Customs Enforcement (ICE).

**Emergency Transfer** - Temporary movement found necessary to protect offenders and staff from imminent danger of physical harm, to prohibit offenders from destruction of State property, and/or escape

**Facility Reassignment (Transfer)** - The physical movement of an offender from the custody of one facility to the custody of another facility within the purview of the Department of Corrections and local jail facilities

~~**Grooming Standards Violator Housing Unit (VHU)** - An offender housing unit designated to house~~

**ENCLOSURE B**

~~Grooming Standards Violators with the objective to manage and encourage compliance of male offenders determined to be in violation of Department of Corrections grooming standards~~ (deleted 7/1/19)

**High Risk Sexual Victim (HRSV)** - As identified by the *Classification Assessment* and Psychology Associate ~~QMHP~~ assessment, any incarcerated offender confirmed as a sexual victim or identified as being at high risk of being sexually victimized (changed 4/1/20)

**Initial Classification Date (ICD)** - The date on which the offender was initially assigned to a Security Level

**Institutional Classification Authority (ICA)** - The facility staff person designated to conduct offender case review hearings.

**~~Local~~ DOC Jail Contract Work Release** - For eligible offenders housed within a DOC institution, the DOC in contract with local and regional jails provides the opportunity for offenders to return to a local or regional jail for work release ~~A program operated by local and regional jails under contract with the Department of Corrections to provide work release opportunities for state offenders in the locality where they will be released after incarceration~~ (changed 3/2/18)

**Multi-Institution Treatment Team (MITT)** - MITT members are responsible for assigning the offender to one of the Secure Diversionary Treatment Programs and transitioning offenders to other SDTP programming and out to a non - SDTP general population setting upon completion of programming. (added 1/16/18)

**Offender with Serious Mental Illness (SMI)** - Offender diagnosed with a Psychotic Disorder, Bipolar Disorder, Major Depressive Disorder, PTSD or Anxiety Disorder, or any diagnosed mental disorder (excluding substance abuse disorders) currently associated with serious impairment in psychological, cognitive, or behavioral functioning that substantially interferes with the person's ability to meet the ordinary demands of living. (added 1/16/18)

**Parole Board Recommendation** - The Parole Board may recommend an offender for work release participation in lieu of granting parole. Recommendations are reviewed administratively by Central Classification Services.

**Protective Custody** - A classification status and form of custodial management for offenders requesting or requiring separation from other offenders as a result of their personal security needs

**Protective Custody Unit** - A special purpose general population housing unit designated by the Director for offenders classified as requiring separation from other offenders as a result of their personal security needs; offenders requesting and requiring assignment to a protective custody unit may be managed in General Detention and Segregation or Restrictive Housing, as appropriate, pending assignment and transfer.

**Secure Diversionary Treatment Program (SDTP)** - Bed assignments designated for offenders who ~~have been~~ are classified as SMI; operates with structured security regulations and procedures, and provides programming and treatment services conducive with evidence based treatment protocols and individualized treatment plans. (added 1/16/18, changed 2/11/20)

**Serious~~ly~~ Mental~~ly~~ Ill~~ness~~ (SMI) Coordinator** - A member of the MITT responsible for gathering and organizing documentation for SDTP referrals and coordinating the offender review, approval, and assignment process (added 1/16/18, changed 10/1/18)

**Shared Allied Management (SAM) Unit** - A residential programming unit operated at designated DOC institutions to deliver intensive services in a safe environment to specific offender populations that typically require a high level of services from security, mental health, and/ or medical staff (added 1/16/18)

**Sheriff Requested Home Electronic Monitoring (HEM)** - The Code of Virginia (§53.1-131.2, paragraph C) does not grant Department of Corrections the authority to operate an HEM incarceration program or approve offenders for such a program. However, at the request of the jail, state responsible offenders can be assigned to a local jail and the Sheriff or Jail Administrator can then approve them for HEM status. Offenders are not eligible to earn good conduct credit when on HEM status.

**Sheriff/Jail Requested Work Release** - A Sheriff/Jail Administrator may request in writing that a state

responsible ~~eligible~~ offender, housed in ~~a DOC facility or at~~ a jail, be ~~permanently~~ assigned to the jail's work release program. ~~Jails sign a one-time work release contract with DOC.~~ (changed 3/2/18)

**Steps to Achieve Reintegration (STAR) Program** - A DOC program operated at designated DOC institutions for offenders who, motivated by fear, refuse to leave segregation or restrictive housing and enter general population

IV. PROCEDURE

A. Transfers of offenders

1. Except where otherwise specified in this operating procedure, all institutional transfers should be coordinated through the Transportation Section, Central Classification Services.

2. Transfer of Offender Records:

   a. The offender's criminal record, including personal property, medical records, and any prescribed medication orders, shall accompany an offender on transfer to any DOC institution. NOTE: This does not apply to temporary transfers to hospitals or to local jail facilities to facilitate court appearances.

   b. The Records Office shall complete the *Interdepartmental Transfer Notice (CA4)* 050_F9 (see Operating Procedure 050.3, *Facility Release of Offenders*) and attach it to the outside of the envelope containing the Facility Folder/ Historical Hardcopy Record and Medical Records.

   c. Facility Unit Heads or their designees of receiving institutions are not required to accept the custody of the offender without the complete applicable historical hardcopy record or facility folder.

B. Population Management Transfers

1. Central Classification Services (CCS) may administratively reassign offenders to other institutions without an ICA Hearing for the purposes of managing the prison population. Offenders who were administratively transferred to a facility are not required to meet the eligibility criteria of one year at present assignment in order to request a transfer at their Annual Review. The offender's transfer request at their annual may be submitted to CCS for final review. (added 5/1/19)

2. CCS may assign offenders temporarily to institutions not on the same security level for purposes of interviews, courts, medical, psychological, security, special work assignments, etc. Transportation will be coordinated through the routine Central Transportation schedule if at all possible.

3. The Director of Offender Management Services has authorized specific parent host institutions to temporarily transfer eligible and suitable offenders to their adjacent Work Centers. The Facility Unit Head or designee must complete an *Intra-Regional Transfer Authorization* 050_F8 (see Operating Procedure 050.3, *Facility Release of Offenders*). The Transportation Supervisor shall be notified via telephone or email and copies of the *Authorization* shall be forwarded to Central Transportation Services, the Institution's Records Office, and the receiving Work Center prior to physical movement of the offender.

C. Field Unit and Work Center Transfers (5-ACI-5F-03; 4-4444; 4-ACRS-5A-14 [I])

1. Field Units and Work Centers are minimum security facilities designed to provide suitable confinement for lower risk offenders, increase productivity of offenders through work activity, and provide a cost effective alternative to more traditional prison construction.

2. Offenders who meet the eligibility criteria may request a transfer to a Field Unit or Work Center at the time of their annual review, or may be administratively reviewed and assigned by CCS upon determination that such an assignment is appropriate.

3. All institutional requests will be submitted, via VACORIS, to CCS for review and final decision.

4. Eligibility Criteria - Offenders must meet each of the following criteria to be reviewed for assignment to a Field Unit or Work Center:

a.  Security Level 1 offenders - No Murder I or II, Sex Offense, Kidnap/Abduction, No Escapes within the last ~~15~~ 10 years as defined in the *Institutional Assignment Criteria*, or Felony Detainers (changed 5/1/19)

b.  Security Level W offenders - No Murder I or II, Voluntary Manslaughter, Sex Offense, Kidnap/Abduction, Carjacking, ~~Malicious Wounding,~~ Flight/FTA pattern, No Escapes within the last ~~15~~ 10 years as defined in the *Institutional Assignment Criteria*, No Felony Detainers.  Felony convictions for Robbery w/Weapon Present or Implied, Malicious Wounding, Unlawful Wounding, Maiming, and Felonious Assault, including multiple convictions, will be considered on a case-by-case basis. (changed 5/1/19)

c.  Field Units and Work Centers

   i.  Class Level I or II

   ii.  "A" or "B" Medical Location Code and "D" Medical Location Code for Psychotropic Medications with "MH-X" Mental Health Classification Code ~~Offenders assigned to a "D" Medical Location Code for systemic allergies will be considered on a case-by-case basis~~ (see *Standard Treatment Guideline - Medical/ Location Codes*). (changed 5/8/17)

   iii.  "0" or "1" Mental Health Classification Code.  Offenders assigned to a "2" Mental Health Classification Code will be considered on a case-by-case basis for assignment to a designated Field Unit or Work Center (see Operating Procedure 730.2, *Mental Health Services: Screening, Assessment, and Classification*, Attachment 4, *Designated Field Unit and Work Center - Psychiatric Services Guidelines*).

D.  Cadre Assignment Transfers

1.  Offenders who meet all eligibility criteria may request a Cadre assignment at the time of their annual review, or may be administratively reviewed and assigned by CCS upon determination that such an assignment is appropriate.

2.  Eligibility Criteria - Offenders must meet each of the following criteria to be reviewed for Cadre:

   a.  Security Level W offenders - No Murder I or II, Voluntary Manslaughter, Sex Offense, Kidnap/Abduction, Carjacking, ~~Malicious Wounding,~~ Flight/FTA pattern, No Escapes within the last 10 years as defined in the *Institutional Assignment Criteria*, No Felony Detainers.  Felony convictions for Robbery with Weapon Present or Implied, Malicious Wounding, Unlawful Wounding, Maiming, and Felonious Assault, including multiple convictions, will be considered on a case-by-case basis. (changed 5/1/19)

   b.  Security Level 1 offenders - No Murder I or II, Sex Offense, Kidnap/Abduction, Escape within the last 10 years as defined in the *Institutional Assignment Criteria*, or Felony Detainers (added 5/1/19)

   c.  Security Level 2 offenders - No Life+ or Multiple Life sentences, Single Life GCA sentences must have reached their PED.  Single Life ESC sentences are not eligible for SL 2

   d.  For all Security Levels (W, 1, and 2)

   i.  Class Level I or II

   ii.  "A" or "B" Medical Location Code, "D" Medical Location Code considered on a case-by-case basis

   iii.  "0" or "1" Mental Health Classification Code, "2" Mental Health Classification Code considered on a case-by-case basis

   e.  No Disciplinary Infractions in the past 6 months

3.  CCS must be notified when an offender is no longer eligible or suitable for a Cadre Assignment.

4.  Upon notification that an offender is no longer eligible or suitable for Cadre assignment, CCS will review for appropriate reassignment.

E.  Medical and Mental Health Transfers

1.  Temporary or permanent transfers for medical purposes will be coordinated by the Office of Health

Services in accordance with Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*, and Operating Procedure 720.7, *Emergency Medical Equipment and Care*.

2. Transfers of offenders based on mental health problems will be handled through the CCS Psychologist Senior in accordance with Operating Procedure 730.3, *Mental Health Services: Levels of Service*.

F. Court Appearance Transfers

1. An offender summoned by Court order to appear in a Court may be housed in a local jail facility for court appearances. Offenders transferred to local jail facilities for Court purposes will be returned to the sending institution upon completion of their involvement in Court proceedings.

2. Where it is deemed necessary to transfer an offender from one institution to another to facilitate Court appearance in the absence of a Court order, the Facility Unit Head or their designee receiving verbal instructions from the Court (or the Attorney General's office) shall promptly notify the Director of Offender Management Services.

   a. The Facility Unit Head or their designee will indicate the date of the scheduled Court appearance.

   b. The Director of Offender Management Services or designee will issue a temporary reclassification order authorizing the necessary transfer to an appropriate institution.

   c. Upon completion of the Court appearance, the offender will be returned to the sending institution, if suitable.

G. Emergency Transfers

1. In situations which require the immediate removal of an offender from an institution, CCS (during business hours) or the Regional Administrator or Regional Duty Officer (during non-working hours, holidays, and weekends) may authorize a temporary transfer to any equal or higher security level institutional bed. These transfers will be in accordance with levels established in the *Institutional Assignment Criteria*. Such decisions may be made for security and health reasons only, and must conform to the definition of *Emergency Transfer* in this operating procedure.

2. Exception: The Director of Offender Management Services has authorized all Work Centers to coordinate the temporary, emergency removal of offenders from their units with their parent host institution using an *Intra-Regional Transfer Authorization* 050_F8 (see Operating Procedure 050.3, *Facility Release of Offenders*). If the Facility Unit Head of the host institution accepts the offender for temporary transfer, no further authorization for transfer is necessary. The Transportation Supervisor shall be notified via telephone or email immediately. All eligibility standards for emergency transfer and Institutional Classification Authority (ICA) hearing requirements of Operating Procedure 830.1, *Facility Classification Management,* apply.

3. Where possible, temporarily transferred offenders will be assigned to fill vacant beds and "swaps" of offenders will be utilized only as a last resort. All emergency transfers should be coordinated with the Central Transportation Supervisor. The Regional Administrator, or designee, should contact (email acceptable) the Central Transportation Supervisor the next business day after a temporary intra-regional transfer to confirm that their transfer presents no conflict with already committed beds.

4. All temporary, emergency transfer decisions are subject to review and approval by CCS. All Institutional Classification Authority (ICA) Hearing requirements of Operating Procedure 830.1, *Facility Classification Management*, shall be observed.

5. Offenders Eligible for Emergency Transfer:

   a. An offender who cannot be safely controlled at the current institution pending standard reclassification due to disruptive or violent/aggressive infractions; the offender may not be assigned to a general population status at time of transfer.

   b. An offender whose medical needs require immediate transfer to an institution with 24 hr. medical coverage, specialized medical equipment, or close proximity to a major medical facility.

6. Processing Temporary Emergency Transfers - (Normal Business Hours - 8:00 am - 5:00 p.m.):

   a. The Facility Unit Head or the Assistant Facility Unit Head requesting a temporary transfer will contact CCS. (4-ACRS-5A-06 [I])

   b. This institutional administrator will provide a detailed written explanation of the rationale for the offender's assignment to segregation/ restrictive housing, the need for their immediate transfer from the current housing institution, and a recommendation of the level of security housing needed for the offender.

   c. CCS will issue a *Temporary Reclassification* to affect the necessary transfer.

7. Processing Temporary Emergency Intra-Regional Transfers - (Non-Working Hours, Holidays, and Weekends):

   a. The Regional Administrator or Regional Duty Officer will be responsible for determining the validity of need for immediate temporary transfer based on a Facility Unit Head (or Administrative Duty Officer if the Facility Unit Head is not available) request. (4-ACRS-5A-06 [I])

   b. The Regional Administrator, or designee, will ensure the offender being transferred meets the established assignment criteria of the institution chosen to receive the offender and will ensure the sending institution completes a thorough records check for documented keep separates prior to transfer to ensure that the temporary transfer will not place the offender in jeopardy.

   c. The Regional Office shall maintain a permanent ledger or file of all temporary transfers approved at the regional level.

   d. The Regional Administrator, or designee, will be responsible for ensuring institutional compliance with Operating Procedure 830.1, *Facility Classification Management*.

   e. The *Intra-Regional Transfer Authorization* 050_F8 (see Operating Procedure 050.3, *Facility Release of Offenders*), along with a detailed, written explanation of the need for temporary transfer from the offender's housing institution will be completed and distributed.  Notification to the Central Transportation Section will be made by telephone and fax or email of the *Intra-Regional Transfer Authorization* by 9:00 AM on the following working day.

   f. When a temporary transfer conflicts with a bed commitment, CCS will select an alternate location, where possible, on the first working day following the temporary move.

8. Responsibilities for Temporary Emergency Transfer:

   a. Sending Institution's Responsibilities

      i. The sending institution is to provide CCS or the Regional Administrator with clear, concise information regarding the need for a temporary transfer.  A record keep separate check will be conducted to ensure the offender has no documented keep separates at the institution to which they are being sent.

      ii. Institutional Classification Authority (ICA) Hearing will be conducted by the sending institution when the offender is being assigned to segregation/ restrictive housing status at the same time they are being temporarily transferred.  When this is not possible, the sending institution will ensure at a minimum the following is accomplished prior to the physical move:

         (a) Offender will receive and sign an *Institutional Classification Authority Hearing Notification*, per Operating Procedure 830.1, *Facility Classification Management* for assignment to segregation/ restrictive status, prior to transfer.

         (b) The Reporting Officer will provide a signed written statement describing the pertinent facts and action(s) taken concerning the incident that prompted or resulted in the temporary transfer.

      iii. The following documents are to be forwarded to the receiving institution with the offender's record at the time of transfer:

         (a) *Institutional Classification Authority Hearing Report*, indicating the reason for transfer

         (b) Reporting Officer's original written statement

         (c) Any untried disciplinary infractions as well as the originals of any infractions

    (d) *Disciplinary Hearing Reports* which are pending possible offender appeal action

    (e) Other pertinent documents, statements and/or reports concerning the incident and/or transfer (i.e. keep separate lists or completed request sheets, ICA results)

  b. Receiving Institution's Responsibilities

    i. The sending Facility Unit Head or designee will apprise the receiving Facility Unit Head or their designee of the pertinent facts surrounding the case.

    ii. If an ICA was not conducted prior to the offender's physical transfer, the receiving institution will conduct an ICA Hearing within three working days. The ICA may address a temporary assignment pending the outcome of the investigation or disciplinary hearing or a permanent assignment for the offender, whichever is appropriate. If a temporary assignment is addressed by the ICA pending completion of an investigation or disciplinary action, an additional ICA hearing will be required to address the offender's permanent assignment.

    iii. The institution will ensure that all procedural safeguards are observed per applicable operating procedures.

    iv. The institution conducting the ICA Hearing will note in *Classification Action*:

      (a) The fact that the offender was temporarily transferred

      (b) The date of the transfer

      (c) The location to and from which the offender was transferred

      (d) The specific reason(s) for the temporary transfer and recommendations for institutional assignment

  c. Central Classification Services Responsibility

    i. The Manager of CCS, or designee, will determine the priorities when a temporary regional transfer conflicts with an earlier bed commitment.

    ii. The Manager will advise the Transportation Supervisor to redirect offenders as deemed necessary and appropriate.

  d. All *Intra-Regional Transfer Authorizations* received in the Central Classification Services will be forwarded to the Transportation Supervisor who will maintain a log of all intra-regional transfers.

  e. CCS will review each *Classification Action* involving offenders who have been temporarily transferred intra-regionally. CCS will require the institution where the offender is housed to provide additional information for any *Classification Action* that does not specifically address the rationale for temporary transfer.

  f. CCS will ensure all necessary procedural safeguards are in place and will initiate final action in the case of each temporary transfer.

H. Transfer to Other Regional Facilities for Special Housing/ Restrictive Housing

  1. Facility Unit Heads or their designees may authorize the transfer of an offender to another institution's Special Housing Unit or Restrictive Housing Unit when the sending institution does not have adequate special housing/ restrictive housing resources.

  2. In such cases, the offender is normally returned to the assigned institution upon return to General Population.

  3. The Institutional Classification Authority will review offenders who, for security reasons, cannot be returned to their institution of assignment.

I. Disciplinary/ Keep Separate Transfers

  1. Offenders may be referred administratively to the Institutional Classification Authority (ICA) for transfer consideration to another appropriate institution when the institution determines the offender is a threat to the secure and orderly operation of the institution due to disciplinary infractions or a documented keep separate situation.

  2. Offenders assigned to a restrictive housing unit or special housing for investigative purposes or pre-hearing detention should not be recommended for a transfer until the investigation is completed or

the charge is heard. When the offender is assigned to segregation status or restrictive housing, the ICA may recommend a transfer to a suitable institution (with documentation) or return the offender to the general population.

J. Protective Custody

1. Designation of Protective Custody Units

    a. The Department of Corrections Director or designee shall determine the location of Protective Custody Units and the number of beds assigned for that purpose.

    b. The Facility Unit Head or designee should designate the specific beds within the institution allocated to protective custody use.

    c. Protective custody units may be double celled or double bunked as needed for population management.

2. An offender may declare a need for protection at any time.

    a. After thorough investigation, the institution administration may request an offender's transfer to the Protective Custody Unit, if deemed appropriate.

    b. The institution(s) maintaining a Protective Custody Unit may be at a higher security level than that which the offender is currently assigned.

    c. Offenders assigned to the Protective Custody Unit will be designated as security level P.

3. Classification To Protective Custody Units - The ICA under provisions of Operating Procedure 830.1, *Facility Classification Management*, should reach a decision for a protective custody assignment based on substantial, credible information, and after investigation as per Operating Procedure 830.6, *Offender Keep Separate Management*, which confirms the need for protective custody. For example, the offender:

    a. Has multiple documented keep separates

    b. Documented former public officials, law enforcement or other employees from criminal justice agencies

    c. Documented testimony against gang or other crime organization

    d. High Risk Sexual Victim (HRSV) or Sexual Abuse Victim

        i. The institution shall make individualized determinations about how to ensure the safety of each offender. (§115.42[b])

        ii. In deciding whether to assign a transgender or intersex offender to a Protective Custody Unit, the institution shall consider on a case-by-case basis whether this placement would ensure the offender's health and safety, and whether the placement would present management or security problems. (§115.42[c])

        iii. A transgender or intersex offender's own views with respect to their own safety shall be given serious consideration. (§115.42[e])

    e. Gang members will be considered on a case-by-case basis.

4. Offenders may be placed in segregation/ restrictive housing at the discretion of the ICA upon a determination that such placement is appropriate for the security needs of the offender. Offenders should be managed in accordance with Operating Procedure 425.4, *Management of Bed and Cell Assignments*, and Operating Procedure 861.3, *Special Housing*, pending review for protective custody assignments (see Operating Procedure 425.4RH, *Management of Bed and Cell Assignments*, and Operating Procedure 841.4, *Restrictive Housing Units*, for offenders housed in institutions operating under the Restrictive Housing Model)

5. Offenders identified as HRSV or offenders alleged to have suffered sexual abuse should not normally be placed in segregation or a restrictive housing unit without their consent by the ICA unless it has been determined that there is no available alternative means of separation from likely abusers. (see Operating Procedure 425.4, *Management of Bed and Cell Assignments* or Operating Procedure 425.4RH, *Management of Bed and Cell Assignments*, as applicable) (§115.43[a], §115.68)

    a. The ICA must clearly document on the *Institutional Classification Authority Hearing* report the basis for the institution's concern for the offender's safety and the reason why no alternative means of separation can be arranged. (§115.43[d], §115.68)

    b. Involuntary assignment to Segregation or a Restrictive Housing Unit shall only be made until an alternative means of separation from likely abusers can be arranged. (§115.43[c], §115.68)

    c. This assignment to segregation/ restrictive housing shall not ordinarily exceed a period of 30 days (§115.43[c], §115.68)

    d. Mental Health staff shall advise the ICA on whether the offender can be released to General Population or whether they must be assigned to Segregation/ Restrictive Housing and/or transferred to the DOC Protective Custody Unit. (§115.43[c], §115.68)

    e. The Regional PREA Analyst must be notified of this assignment and kept informed of any changes in the offender's status. (§115.43[a], §115.68)

6. Offenders with documented aggressive behavior or other potential for causing management problems should not be classified to a specialized Protective Custody Unit. They should be considered for other alternatives that meet their protective custody needs without endangering the safety of staff or other offenders.

7. Requests will be submitted via VACORIS to CCS for review and final decision. Offenders should not be moved from a general population or segregation/ restrictive housing assignment to a Protective Custody Unit without the approval of the CCS.

8. CCS may assign an offender to the Protective Custody Unit for one or more of the following reasons:

    a. Keep separate claims, whether offender or administrative, have been approved by CCS in accordance with Operating Procedure 830.6, *Offender Keep Separate Management*.

    b. The offender's background, crimes, lifestyle, behavior, etc. indicates a high likelihood they will be preyed upon by other offenders in a general population setting

9. The following information should be provided in the *Institutional Classification Authority Hearing* report:

    a. The reason(s) the offender is in need of protective custody

    b. How long the offender has been in segregation/ restrictive housing for his protection

    c. Any charges the offender has received while in segregation/ restrictive housing for protection

    d. Any other documentation that would provide CCS with information to assess the institution's request for an assignment to the Protective Custody Unit

10. General Provisions of Protective Custody Units (§115.43[b], §115.68)

    a. To the extent feasible, Protective Custody Units should provide programs and services similar to those available to general population offenders.

    b. Institutions operating Protective Custody Units should develop Local Operating Procedures to specify the services and programs that will be available to protective custody offenders. Procedures should generally address the following programs and services:

        i. Orientation

        ii. Personal Property

        iii. Visitation

        iv. Legal Services/Law Library

        v. Commissary purchases

        vi. Education

        vii. Medical Services

        viii. Telephone Calls

        ix. Work Assignments

        x. Exercise

   xi. Counseling

   xii. Correspondence

 11. Classification Reviews

  a. Assignment to a Protective Custody Unit is a specialized general population housing status. Offenders housed in a Protective Custody Unit should have an annual review of their Good Time Class Level with an updated Re-entry Case Plan and Home Plan. Security level and transfer requests should not be considered.

  b. Protective custody offenders who become disruptive should be assigned to the institution's regular segregation/ restrictive housing unit in accordance with Operating Procedure 425.4, *Management of Bed and Cell Assignments* or Operating Procedure 425.4RH, *Management of Bed and Cell Assignments* and Operating Procedure 841.4, *Restrictive Housing Units* or Operating Procedure 861.3, *Special Housing,* as applicable.

  c. An offender may be referred administratively to the Institutional Classification Authority (ICA) for transfer out of the Protective Custody Unit for the following:

   i. The institution determines that the subject can no longer be managed in the Protective Custody Unit

   ii. The institution determines that the threat to the offender's safety no longer exists.

   iii. The offender requests release or refuses an assignment to the Protective Custody Unit. When an offender requests release or refuses assignment, the *Protective Custody Release and Refusal* 830_F7 must be completed and attached to the ICA in VACORIS.

   iv. All institutional recommendations will be escalated to Central Classification Services via VACORIS for a final decision.

   v. If approved, the offender will be assigned to an appropriate security level and institution.

 12. Keep separates within the Protective Custody Unit

  a. Offenders who claim keep separates within the Protective Custody Unit must report and identify these keep separates in accordance with Operating Procedure 830.6, *Offender Keep Separate Management.*

  b. Keep separate claims should be evaluated for validity by CCS. This requirement is an additional precaution that applies only to Protective Custody Units.

  c. The Protective Custody Unit should take reasonable steps to separate keep separates pending CCS decision.

K. Security Level S Transfers

 1. Security Level S is a type of housing reserved for special purpose bed assignment which is utilized by institutions under proper administrative process for the protective care and management of offenders.

 2. To initiate a transfer to Red Onion State Prison (ROSP) ~~or Wallens Ridge State Prison (WRSP)~~ for assignment to Security Level S, the institution currently housing the eligible offender should conduct an ICA Hearing in accordance with Operating Procedure 830.1, *Facility Classification Management,* and Operating Procedure 830.2, *Security Level Classification,* documenting the offender's eligibility and recommending assignment ~~to the appropriate institution~~. (changed 1/16/18)

 3. Central Classification Services (CCS) will review each assignment ~~to the appropriate institution~~ and, in VACORIS, escalate eligible offenders for review to the ~~respective~~ Facility Unit Head or their designee and the Regional Operations Chief. (changed 1/16/18)

L. ~~Grooming Standards Violator Housing Unit (VHU)~~ (deleted 7/1/19)

 ~~1.~~ ~~Wallens Ridge State Prison (WRSP) has established a Grooming Standards Violator Housing Unit (VHU) to manage and encourage compliance of male offenders determined to be in violation of Department of Corrections grooming standards in accordance with Operating Procedure 864.1, Offender Grooming and Hygiene.~~

2. ~~To initiate a transfer to WRSP for the Grooming Standards Violator Housing Unit, the institution currently housing the eligible offender should conduct an ICA Hearing in accordance with Operating Procedure 830.1, *Facility Classification Management*, documenting the offender's eligibility and recommending assignment to the VHU.~~

3. ~~Central Classification Services (CCS) will review each assignment to VHU and, in VACORIS, escalate eligible offenders for review to the Facility Unit Head or their designee at WRSP and the Regional Operations Chief.~~

M. Steps to Achieve Reintegration (STAR) Program Transfers

1. Offenders in segregation or restrictive housing who refuse assignment to general population due to fear, threat, violent or aggressive behavior, or legitimate protective custody needs should be reviewed by the institution for transfer to the *Steps to Achieve Reintegration (STAR) Program*.

2. Security level W through 4 offenders shall be considered for the *Star Program* at Keen Mountain Correctional Center (KMCC) and Security Level 5 offenders and offenders not eligible for placement at KMCC shall be considered for the High Security Level *STAR Program* at Wallens Ridge State Prison (WRSP).

3. To recommend a transfer to either *STAR Program*, institutional staff shall prepare the *Offender Case Analysis for Steps to Achieve Reintegration (STAR) Program* 830_F5 for review and approval by the Facility Unit Head or designee.

4. The staff member preparing the *Offender Case Analysis* must notify an institution Psychology Associate ~~QMHP~~ who will complete the *Steps to Achieve Reintegration (STAR) Program - Mental Health Review* 830_F6. (changed 4/1/20)

   a. The *Steps to Achieve Reintegration (STAR) Program - Mental Health Review* 830_F6 must be sent directly to the Keen Mountain Correctional Center (KMCC) or the Wallens Ridge State Prison (WRSP) senior Psychology Associate ~~QMHP~~ for review. (changed 4/1/20)

   b. Failure to submit the *Mental Health Review* to KMCC or WRSP will result in CCS disapproval of the offender for participation in the *STAR Program*.

   c. The *Steps to Achieve Reintegration (STAR) Program - Mental Health Review* 830_F6 shall not be uploaded into VACORIS.

5. A formal ICA Hearing shall be conducted in accordance with Operating Procedure 830.1, *Facility Classification Management* and submitted via VACORIS to CCS for review.

   a. Confirmation that the *Steps to Achieve Reintegration (STAR) Program - Mental Health Review* 830_F6 was completed and submitted to KMCC or WRSP must be documented on the *Institutional Classification Authority Hearing Notification*.

   b. The completed *Offender Case Analysis* must be uploaded as an external document and forwarded with the ICA recommendation for assignment to the *STAR Program*.

6. CCS will review each assignment to the *STAR Program*, and in VACORIS, escalate eligible offenders for review by the Facility Unit Head or designee of the designated *STAR Program* institution and the Regional Operations Chief.

7. The Facility Unit Head or designee and the Regional Operations Chief must approve the offender's admission into the *STAR Program* and will coordinate with Central Transportation to arrange transfer, as needed for offenders accepted into the program.

8. Offenders disapproved for assignment to the STAR Program should be re-evaluated for alternative options i.e. release to general population and/ or transfer.

N. Shared Allied Management (SAM) Unit Transfers (added 1/16/18)

1. The purpose of the SAM Unit is to promote safety within institutions by avoiding the use of Special and Restrictive Housing to manage offenders that typically require a high level of services from security, mental health, and/ or medical staff.

2. Three specific offender populations are eligible for assignment to the *Shared Allied Management (SAM) Unit*.

   a. Mental Health Population: Mentally ill or seriously mentally ill (SMI) offenders who are at a greater risk to cycle in and out of Special or Restrictive Housing and/ or Mental Health Units for disruptive behavior related to their mental health diagnoses and symptoms to include:

      i. Offenders with a Mental Health Code 2 or 2S, who are housed in SHU/ RHU with a history of repeated misbehavior due to their mental illness

      ii. Offenders recently released from an Acute Care Unit or other Mental Health Units

      iii. Offenders who had suicidal/ self-harm incidents and/ or thoughts in the last three months

      iv. Offenders who are having a difficult time adapting to the basic demands of their current housing status due to the symptoms of their mental health diagnosis but do not meet the criteria for a Mental Health Unit

   b. Medical Population: Medically infirmed offenders requiring intensive medical attention but not requiring admission to the infirmary

   c. Vulnerable Population: Offenders who are at a greater risk for victimization or being bullied in general population due to characteristics such as cognitive challenge, age (seniors and youthful), small in stature or timid personalities

3. SMI offenders requiring special housing or restrictive housing for longer than 28 days, offenders with a history of repeated or recent predatory behavior, and offenders attempting to manipulate their housing due to debt, threat, other social factors, or personal gain are not eligible for assignment to a *SAM Unit*.

4. In order to recommend an offender for assignment to ~~any~~ a *SAM Unit*, designated institutional staff ~~shall~~ must prepare the *Shared Allied Management (SAM) Unit Admission Screening* 830_F8 for review and approval by the Chief of Housing and Programs (CHAP) ~~the Unit Manager and senior QMHP of the *SAM Unit*~~. (changed 10/1/18)

   a. In order to assign an offender to the *SAM Unit* at their current institution, an informal ICA hearing is required and designated institutional staff must prepare the *Shared Allied Management (SAM) Unit Admission Screening* 830_F8 for review and approval by the ~~Unit Manager and senior QMHP of the~~ institution's ~~*SAM Unit*~~ CHAP. (changed 10/1/18)

      i. Offenders must first be referred and reviewed for placement in the *SAM Unit* at their current institution.

      ii. Submission of the *Shared Allied Management (SAM) Unit Admission Screening* 830_F8 to DOCSAM for internal assignments is not required.

   b. When the offender's assignment to a *SAM Unit* requires an institutional transfer, a formal ICA Hearing ~~shall~~ will be conducted in accordance with Operating Procedure 830.1, *Facility Classification Management*, and submitted via VACORIS to the Psychology Associate Senior at CCS or designee for review. (changed 10/1/18)

      i. The offender's security level score and status must be reviewed to determine if the current security level is appropriate. When the offender's behavior or other factors indicate that the current security level assignment may not be appropriate, the offender's security level must be updated in VACORIS in accordance with Operating Procedure 830.2, *Security Level Classification*. (added 10/1/18)

      ii. The ICA recommendation should include a transfer request to a *SAM Unit* at an appropriate institution listed on Attachment 3, *Shared Allied Management (SAM) Unit Institutional Criteria*. (added 10/1/18)

      iii. Upon conclusion of the ICA and recommendation of offender assignment to a *SAM Unit*, the CHAP or their designee will forward the completed *Shared Allied Management (SAM) Unit Admission Screening* 830_F8 ~~will be forwarded~~ by email to DOCSAM. (changed 10/1/18)

      iv. The Psychology Associate Senior at CCS or designee will review each recommended assignment and, taking into consideration bed availability, will make a determination on the

appropriate institutional *SAM Unit* assignment.

    v. The Psychology Associate Senior at CCS or designee will forward the *SAM Admission Screening* to the ~~Unit Manager and senior QMHP~~ CHAP at the receiving *SAM Unit* for review and approval~~, and escalate the ICA in VACORIS to the Facility Unit Head or designee~~. (changed 10/1/18)

      (a) Within 3 working days, the CHAP or their designee must make email notification to the Psychology Associate Senior at CCS or designee of their decision to either accept, accept with waitlist, or deny an offender's assignment to the *SAM Unit*.

      (b) If the offender is accepted, the Psychology Associate Senior at CCS or designee will approve the offender's admission into the *SAM Unit* and finalize the ICA's recommendation for transfer in VACORIS.

      (c) If the offender accepted with waitlist, the Psychology Associate Senior or designee will add the offender to the statewide wait list for *SAM Unit* beds.

      (d) If the offender is denied for admission, the CHAP or their designee must clearly document the reason for denial on the *Shared Allied Management (SAM) Unit Admission Screening* 830_F8. Denial of a *SAM Unit* referral is limited to legitimate operational or security reasons i.e. validated classification, inappropriate classification, bottom bunk availability, etc.

    vi. When an inappropriate referral is submitted or an offender's admission into a *SAM Unit* is denied, the Psychology Associate Senior at CCS or their designee will consult with the Serious Mental Illness (SMI) Coordinator. (added 10/1/18)

      (a) The SMI Coordinator will make the final determination on the appropriateness of these referrals and on an offender's institutional *SAM Unit* assignment.

      (b) The Psychology Associate Senior or their designee will approve or disapprove an offender's admission into a *SAM Unit* on behalf of the SMI Coordinator, finalize the ICA's recommendation for transfer in VACORIS, and notify appropriate staff of the decision.

    ~~vii. The Facility Unit Head or designee will approve the offender's admission into the *SAM Unit* at their institution by finalizing the ICA's recommendation for transfer in VACORIS.~~ (deleted 10/1/18)

5. All offenders ~~will~~ should ~~be required to~~ sign the *Shared Allied Management (SAM) Unit Contract* 830_F9 as a condition of their assignment to ~~an~~ the institution's *SAM Unit*. An offender~~'~~s refusal to sign the *Contract* will be documented on the *Contract* and may result in removal from the *Unit*. (changed 10/1/18)

O. Secure Diversionary Treatment Program (SDTP) Transfer (added 1/16/18)

1. The *Secure Diversionary Treatment Program (SDTP)* is designed to provide treatment in a secure setting to offenders with *Serious Mental Illness (SMI)* in Special or Restrictive Housing who will not be released to General Population or moved into SD-1 or SD-2 within 28 days.

2. In order to initiate the SDTP review process, a formal ICA Hearing shall be conducted in accordance with Operating Procedure 830.1, *Facility Classification Management*, and submitted via VACORIS to the Mental Health Clinical Supervisor (MHCS) of the referring region for review and approval. The institution's ICA recommendation must include a transfer request that includes and is limited to Wallens Ridge State Prison, Marion Correctional Treatment Center, and River North Correctional Center.

    a. Upon conclusion of the ICA and recommendation of offender referral to an SDTP, the Chief of Housing and Programs or designee at the referring facility shall complete the *Assignment to Secure Diversionary Treatment Program* 830_F10 and forward the completed form by email to DOCSMI by the end of the following work day.

    b. The senior Psychology Associate ~~QMHP~~ at the referring facility will complete the *Mental Health Clinical Supervisor - External Review* 830_F11 and a new *Mental Health Serious Mental Illness (SMI) Determination* 730_F34. Both documents will be submitted to the Mental Health Clinical Supervisor (MHCS) of the referring region for review and approval by the end of the following work day. (changed 4/1/20)

    c. The MHCS will conduct an external review and document their decision on the *Mental Health Clinical Supervisor - External Review* 830_F11.

       i. If approved, the completed *Mental Health Clinical Supervisor - External Review* 830_F11 and *Mental Health Serious Mental Illness (SMI) Determination* 730_F34 will be forwarded by email to DOCSMI.

       ii. The MHCS will escalate the ICA in VACORIS to the Regional Operations Chief of the Western Region who approves or disapproves the offender's assignment to an SDTP. If approved, the ICA will then be escalated to the Psychology Associate Senior at CCS.

    d. The Serious~~ly~~ Mental~~ly~~ Illness (SMI) Coordinator will review the *Assignment to Secure Diversionary Treatment Program* 830_F10, *Mental Health Clinical Supervisor - External Review* 830_F11 and *Mental Health Serious Mental Illness (SMI) Determination* 730_F34 and verify the documents are complete and accurate. Upon completion of their review, the SMI Coordinator will prepare the documents for further review and approval by the MITT

       i. The MITT will review the offender and if approved, determine the appropriate SDTP institutional assignment.

       ii. The Psychology Associate Senior at CCS will approve the offender's transfer in VACORIS to the approved SDTP location on behalf of the MITT.

3. After successful completion of the SDTP, offenders with additional Mental Health needs may be referred to a *Shared Allied Management (SAM) Unit* as outlined in this operating procedure.

    a. In addition to the referral process and ICA hearing requirements as provided in this operating procedure, the referring SDTP site must also forward a copy of the *Shared Allied Management (SAM) Unit Admission Screening* 830_F8 to the Chief of Housing and Programs at the receiving SAM site, as determined by the Psychology Senior at CCS.

    b. The <u>Psychology Associate</u> ~~QMHP~~ at the referring SDTP site will also prepare and send an *Electronic Notification of Mental Health Offender Transfer* 730_F11 to the senior <u>Psychology Associate</u> ~~QMHP~~ at the receiving SAM site, as determined by the Psychology Senior at CCS. <u>(changed 4/1/20)</u>

P. Substance Abuse Cognitive Therapeutic Community Transfer

1. Offenders may be administratively assigned and required to participate in a Substance Abuse Cognitive Therapeutic Community (CTC) upon determination that such an assignment is appropriate.

    a. Transfers to CTC will take priority over vocational programming for those offenders who the court has ordered or recommended for TC.

    b. Transfers to CTC will take priority for those offenders who have been enrolled in a vocational program for 4 months or less at the time the transfer is submitted to CCS.

    c. Behavioral Correctional Program Offenders (BCP) will be administratively reviewed and assigned to CTC by CCS.

    d. Offenders may request a CTC transfer at an annual review.

2. Eligible offenders identified on the *Classification Review Screen* in VACORIS or offenders whose COMPAS scores reflect the required rating on the Substance Abuse Scale and Cognitive Behavioral Scale should be reviewed by the ICA for transfer to a CTC at any time after determining the offender's suitability for participation.

3. The institutional ICA will review CTC transfer requests in accordance with the *CTC Eligibility and Suitability Criteria* listed below. Offenders must meet the institution's requirements as listed in the *Institutional Assignment Criteria* which can be found on the Virtual Library

4. CTC Transfer requests should be submitted via VACORIS to CCS for review and a final decision. Requests for Lawrenceville CTC must also be accompanied by the *LVCC New Hope Therapeutic Community Admissions Contract* (see Attachment 1). CCS will determine eligibility and suitability for assignment to the particular institution and will have final authority for approval or disapproval.

    a. Transfer requests shall be submitted in the *Classification* module of VACORIS designated with an *Action Type* of *Transfer*, *Priority 3, Priority Reason* of *Program Needs,* and *Transfer Reason* of *Substance Abuse Program*.

    b. If approved for participation, CCS will effect the necessary transfer.

    c. CCS disapproval will be noted on the Institutional Classification Authority Hearing Report.

5. CTC Eligibility and Suitability Criteria

    a. Indian Creek Correctional Center (ICCC) (males)

       i. Security Level W, 1 or 2

       ii. Mental Health Code 0, 1 or 2

       iii. ~~18-30~~ ~~20~~ 16-26 months to projected release (changed 8/1/18, changed 5/1/19)

       iv. ~~No felony sex offenses~~ (deleted 8/1/18)

       v. No felony detainers

       vi. ~~Required~~ COMPAS *Substance Abuse Scale* and *Cognitive Behavioral Scale* rating in accordance with Operating Procedure 841.1, *Offender Programs and Services* and/or a documented history of substance abuse at the discretion of CCS (changed 8/1/18)

       vii. Ability to read and write

       viii. IQ of 75 or higher

    b. Virginia Correctional Center for Women (VCCW)

       i. Security Level W, 1 or 2

       ii. Mental Health Code 0, 1 or 2

       iii. ~~15-18-20~~ 16-26 months to projected release date (changed 8/1/18, changed 5/1/19)

       iv. ~~No felony sex offenses~~ (deleted 8/1/18)

       v. No felony detainers

       vi. ~~Required~~ COMPAS *Substance Abuse Scale* and *Cognitive Behavioral Scale* rating in accordance with Operating Procedure 841.1, *Offender Programs and Services* and/or a documented history of substance abuse at the discretion of CCS (changed 8/1/18)

       vii. Ability to read and write

    c. Lawrenceville Correctional Center (LVCC) (males)

       i. Security Level 3

       ii. 18 to 36 months to projected release date

       iii. Documented history of substance abuse

       iv. Stable adjustment and at least 4 months infraction free

       v. Ability to read and write

       vi. Accepts only voluntary referrals

6. Removals from CTC

    a. Failure to participate will be justification for Class Level IV per COV §53.1-200.

    b. Offenders who refuse to participate in the CTC program or whose behavior warrants removal from the program as a result of their non-compliant or disruptive behavior will be reviewed by the *Cognitive Community Treatment Team* for removal.

    c. In accordance with Operating Procedure 861.1, *Offender Discipline, Institutions,* a member of the treatment team shall charge the offender with Offense Code 119e *Refusal to participate in or removal from a residential cognitive community program.*

    d. Offenders found guilty of Offense Code 119e shall be referred to the Institutional Classification Authority (ICA) for a formal hearing to address the offender's removal from the TC program, assignment to Class Level IV., review of Security Level, and appropriate institutional assignment.

    e. Offenders determined to be physically or mentally incapable of CTC participation will be referred to the ICA with documentation from the institutional Physician or Psychology Associate ~~QMHP~~ for program removal without sanctions. (changed 4/1/20)

    f.  ICA recommendations for CTC program removal shall be submitted for final review and approval to CCS as a "transfer".

Q. Sex Offender Residential Treatment Program (SORT)

    1.  Offenders determined as eligible for the Sex Offender Residential Treatment Program may be referred to the Director of the SORT Program by completion of the *Sex Offender Residential Treatment Program Referral* (See Operating Procedure 735.2, *Sex Offender Treatment Services (Institutions)*).

    2.  The SORT Treatment Team will review the referral for admission to the program.

    3.  Transfer arrangements for offenders accepted will be made by a member of the Sort Treatment Team through CCS Psychologist Senior or designee. CCS will have final authority for approval or disapproval of transfer.

R. Offender Requested Transfer

    1.  General population offenders (other than Youthful Offenders, Protective Custody offenders, and those sentenced to Death Row) may request a transfer during their annual review to equal security level institution provided the level does not change.

    2.  Offenders requesting transfers must meet the following criteria:

        a.  Must be assigned to a General Population setting

        b.  Must have been at present assignment for a minimum of one year (not required for an offender administratively transferred for population management) (added 5/1/19)

        c.  Must be currently assigned to Security Level W, 1, 2, 3, or 4

        d.  Must be GCA (Good Conduct Allowance) or ESC (Earned Sentence Credit) I or II; GCA L-1 or L-2, for lifers; GCA V-1 or V-2, or have earned an equivalent point score under the GCT (Good Conduct Time) system

        e.  Must not have been convicted of any institutional infractions within the past twelve months

        f.  Must not have been convicted of an infraction code 100 through 108 or 198 related to any 100-108 codes within the past twenty-four months

    3.  Offenders, whose security level is reduced as the result of annual review, will usually be transferred to an appropriate institution according to their newly assigned security level.

        a.  Offender preferences for transfer should be noted in *Comments*. The ICA should select the institutional assignment in the Action Type - Transfer section of the classification action in VACORIS and escalate to Central Classification Services (CCS) for review and final decision, if necessary.

        b.  Transfers as the result of security level reviews at the time of annual review do not require due process or a formal review.

        c.  Offender requests for transfer to preferred locations must give way to considerations of space, security, and program availability.

S. Common Fare Diet Transfers -

    1.  Assignments to the Common Fare Diet shall be managed in accordance with Operating Procedure 841.3, *Offender Religious Programs.*

    2.  Requests for transfers from facilities that do not offer the Common Fare Diet will be escalated to CCS for assignment to an appropriate institution.

    3.  Security Level W and 1 offenders who are transferred to a higher security level facility for the Common Fare diet and then voluntarily withdrawal from the diet, will be submitted for an administrative transfer to a facility that houses Security Level W and 1 offenders. (added 5/1/19)

T. Corrections Construction Unit, Environmental Services Unit, and Operational Maintenance Unit

1. The Corrections Construction Unit (CCU), Environmental Services Unit (ESU), or Operational Maintenance Unit (OMU) are considered programs which also provide job skills.

2. Offenders desiring to be assigned to the Corrections Construction Unit (CCU), Environmental Services Unit (ESU), or Operational Maintenance Unit (OMU) should send a letter to the Manager of the CCU, ESU, or OMU listing their name, number, current location, and a brief listing of their training and skills that would be useful in the CCU, ESU, or OMU.

   Manager, Corrections Construction Unit
   3600 Woods Way, Bld. 74
   State Farm, VA 23160

   Manager, Environment Services Unit
   783 Prison Road
   Boydton, VA 23917

   Manager, Operational Maintenance Unit
   6900 Atmore Drive, Room 3040
   Richmond, Virginia 23225

3. The CCU Manager, ESU Manager, or OMU Manager will submit a request to Central Classification Services (CCS) with recommendations of appropriate candidates for assignment to CCU, ESU, or OMU. The CCS will review each referral and determine approval/disapproval for CCU, ESU, or OMU.

4. Type I "Unrestricted" Assignment

   a. Offenders are permanently assigned to CCU, ESU, or OMU.

   b. Offenders may be transferred as needed by the CCU Manager, ESU Manager, or OMU Manager throughout the State to work sites for the period of time needed.

   c. The CCU Manager, ESU Manager, or OMU Manager will coordinate with the Central Transportation Section for temporary assignments to other institutions.

   d. Criteria
      i. Security Level W
      ii. Outside Work Classification I, or II
      iii. "A" Medical, and MH-0 or medically cleared for CCU, ESU, or OMU
      iv. Not Adult Basic Education Program eligible is preferred, but not required
      v. Within 7 years of MPRD/GTRD
      vi. No disciplinary convictions within the last 6 months
      vii. No violent or assaultive current or prior offenses

5. Type 2 "Restricted" Assignment

   a. Offenders are permanently assigned to CCU, ESU, or OMU and housed at a designated institution.

   b. Offenders are restricted to work under armed supervision or only for inside perimeter projects dependent upon the offender's work classification.

6. Offenders approved for the Corrections Construction (CCU), Environmental Services (ESU), and Operational Maintenance Unit (OMU) will complete the journal "~~Skills for Successful Living~~ Re-entry Planning Workbook" and view the video "Money Smart: Making Cents of Your Finances".
   (changed 5/1/19)

7. CCS must be notified when an offender is no longer eligible or suitable for CCU, ESU, or OMU assignment.

8. Upon notification that an offender is no longer eligible or suitable for CCU, ESU, or OMU assignment, CCS will review for appropriate reassignment.

U. Work Release

1. DOC Jail Contract Work Release - Offenders housed in a DOC institution ~~offenders who meet all eligibility criteria~~ may request assignment to work release at a local or regional jail at the time of their annual review, or may be administratively reviewed at the discretion of the institution based upon pending date of release, provided the offender meets all other criteria. (5-ACI-5F-03; 4-4444; 4-ACRS-5A-14 [I]; 4-APPFS-2C-04) (changed 3/2/18)

2. Sheriff/Jail Requested Work Release – For DOC offenders housed in local or regional jails, a Sheriff/ Jail Administrator may request in writing that a state responsible offender be assigned to the jail's work release program. (added 3/2/18)

3. Transitional Women's Work Release (TWWR) - See Attachment 2 for the eligibility and suitability criteria for the *~~DOC~~ Transitional Women's Work Release Program*. (changed 12/1/19)

   a. Participation in the *~~DOC~~ Transitional Women's Work Release Program* will not be limited by an offender's release plan area. (changed 12/1/19)

   b. Female offenders whose release plan is to the ~~Tidewater~~ Richmond area are not eligible for ~~local~~ DOC Jail Contract Work Release and will only be considered for work release through the *~~DOC~~ Transitional Women's Work Release Program*. (changed 3/2/18, changed 12/1/19)

   c. A completed and signed copy of the *Transitional Work Release Offender Agreement* 830_F12, *Transitional Work Release Employer Agreement* 830_F13, and *Transitional Work Release Employment Assignment* 830_F14 must be maintained on file at the facility. (added 12/1/19)

4. ~~Transitional Men's Work Release (TMWR) - See Attachment 4 for eligibility and suitability criteria for the *Transitional Men's Work Release Program*.~~ (added 8/1/19, deleted 12/1/19)

   a. ~~Participation is limited to offenders who have a release plan to the greater Richmond area to include the cities of Richmond, Petersburg, and Colonial Heights and the counties of Henrico, Chesterfield, Hanover, New Kent, Goochland, Charles City, Amelia, and Powhatan.~~

   b. ~~Offender transfer to State Farm Work Center for the purpose of participation in the Transitional Work Release Program does not guarantee assignment to TMWR.~~

      i. ~~Offenders will be required to complete a 30 day evaluation/orientation conducted by Spectrum staff and will be assigned to the kitchen for a minimum of 90 days.~~

      ii. ~~Offenders working in the State Farm Work Center kitchen for at least 90 days will be referred to the ASD Culinary Arts Program where the offender will work for a minimum period of 6 months and complete Foundations I and II.~~

      iii. ~~Offenders will be required to complete the ServSafe program prior to or during their assignment to the TMWR.~~

      iv. ~~Upon successful completion of the ASD Culinary Arts Program and ServSafe certification, the offender will be reviewed for participation in the community work release portion of the TMWR Program.~~

   c. ~~Institutional recommendations for offender approval to the community work release portion of TMWR will be submitted to CCS for final review.~~

      i. ~~The counselor will review the Transitional Work Release Offender Agreement 830_F12 with the offender; the offender must sign the *Agreement* in order to participate in community work release.~~

      ii. ~~The Employer's Community Work Release Agreement 830_F13 and Transitional Work Release Employment Assignment 830_F14 must be completed to document the expectations for the employer and the offender during the community work release phase of TMWR.~~

5. The institutional ICA will review requests in accordance with *Eligibility Criteria* and *Suitability Criteria* below.

6. Requests will be submitted, via VACORIS, to CCS for review and final decision.

7. Eligibility Criteria - Offenders must meet each of the following criteria to be reviewed for work

release participation:

a. Criminal Offense History - Offenders serving time for, or who have an offense history involving any of the following felony offenses are not eligible for work release unless otherwise noted:

    i. Homicide/Murder - §18.2-30

    ii. Abduction/Kidnapping - §18.2-47

    iii. Sex Related Crimes - §18.2-61

    iv. Robbery - §18.2-58 (Cannot have a conviction for robbery within the last 15 years or more than 2 convictions in the last 25 years)

    v. Felonious Assault, Unlawful Wounding, Malicious Wounding, Maiming - §18.2-51 (Cannot have a conviction for a felonious assault, unlawful wounding, malicious wounding or maiming within the last 15 years or more than 2 convictions in the last 25 years)

    vi. Carjacking - §18.2-58.1

    vii. Mob related offenses - §18.2-38

    viii. ~~No active Protective Orders~~ (moved 3/2/18)

b. Release Criteria - Release criteria vary depending on whether an offender is reviewed for ~~Local~~ DOC Jail Contract Work Release or for Sheriff/Jail Requested Work Release. (changed 3/2/18)

    i. ~~Local~~ DOC Jail Contract Work Release criteria (changed 3/2/18)

        (a) Offenders must be within 14 months of their Good Time Release Date or Mandatory Release Date with a minimum of 8 months left to serve on their sentence.

        (b) Offenders approved for work release will complete the journal "~~Skills for Successful Living~~ Re-entry Planning Workbook" and view the video "Money Smart: Making Cents of Your Finances". Work Release is considered a program which provides job skills. (changed 5/1/19)

    ii. Sheriff/Jail Requested Work Release criteria - DOC offenders housed in ~~the DOC~~ local jails must be within 24 months of their release date. (changed 2/8/18, added 3/2/18)

c. Escape History

    i. There should be no history of escape or attempted escape ~~from incarceration~~ during the last ~~five~~ ten years ~~of incarceration~~. (changed 5/1/19)

    ii. Offenders who have had two or more escapes, or attempted escapes, ~~from incarceration~~ within the past ten years ~~of incarceration~~ are not eligible. (changed 5/1/19)

    iii. ~~Incarceration includes any state or federal prison; local/regional jail or detention facility; or other place where a prisoner is involuntarily confined pursuant to court order. Years of incarceration do not have to be consecutive years.~~ (deleted 5/1/19)

d. Security Level - Offenders must be assigned to Security Level W or 1.

e. Good Time Earning Level - Offenders should be assigned to good time Class Level I or the equivalent. Central Classification Services, during administrative reviews, may waive this criterion if an offender meets all other eligibility and suitability criteria.

f. Medical/Mental Health

    i. Offenders on maintenance medication for high blood pressure, epilepsy, diabetes, etc. may be considered after consultation with institutional medical staff to determine an offender's ability to function in a work setting away from immediate medical services.

    ii. Institutional medical staff should review each case to ensure medical codes are correct and that there are no pending appointments, surgeries, or mental health or dental problems that could prevent assignment at that time.

g. Detainer - Offenders should have no active detainers or pending charges.

h. Program Violations - Offenders removed from work release due to a program violation will not be eligible to reapply for work release for a period of 12 months after the date of removal. Offenders removed due to a criminal conviction committed while assigned to work release are ineligible to reapply during the remainder of their sentence per COV §53.1-62.

i. Offenders removed from court ordered community programs or Community Corrections

Alternative Programs (CCAP) shall not be eligible for sheriff or jail requested work release programs if they are serving a probation violation sentence as a result of their removal.

j. Must be eligible to work in the United States

k. Currently assigned to work under unarmed supervision outside the security perimeter for at least the last six months. All work release recommendations by the ICA shall indicate that the applicant has successfully completed six months of outside work under unarmed supervision. Preferential consideration for work release will be given for offenders who are assigned to a Work Center.

8. Suitability Criteria - The following evaluation criteria should be used when making final decisions for assignment to work release. Consideration should be given to the listed objective risk assessment factors when considering ability to abide by program expectations and level of risk to the public.

a. Severity and total number of current and prior criminal convictions (History of misdemeanor assaults or assaultive behavior may disqualify an offender from acceptance).

b. Length of time in minimum security and good time class level

c. Drug/alcohol abuse history (several jail programs will not accept offenders with "drug distribution" convictions).

d. Program participation and performance during incarceration (e.g. GED, NA)

e. Institution work history and employment stability prior to incarceration

f. Previous probation/parole supervision adjustment included but not limited to failing to report, moving without permission, removal from or failing to complete treatment programs, and absconding from supervision.

g. Previous adjustment in work release or other community release program

h. Consideration should be given to any significant adverse public sentiment to the offender's presence in the community. This may be gauged by specific objections that may be expressed by prosecuting attorneys, courts, local law enforcement officials, victims, or others.

i. History of domestic violence including misdemeanor assault and battery charges, stalking, active protective orders or prior protective order violations, and threatening charges (added 3/2/18)

9. Offender Requests - Offenders meeting the eligibility criteria may request ~~Local~~ DOC Jail Contract Work Release through the institutional counselor during the annual review per Operating Procedure 830.1, *Facility Classification Management*. (changed 3/2/18)

a. Requests may be considered outside the annual review at the discretion of the institution, particularly in cases where the offender's release date precludes any future annual review.

b. Offenders should inform their counselor of a release plan location, so a determination can be made about the availability of a work release program in that locality.

c. The *Work Release Quick Reference* that lists participating jails and any special criteria is available for institutional staff to discuss with offenders. (contact CCS)

10. Referral Process - Referrals may be made by institution staff, the Virginia Parole Board, Sheriff, Jail Administrator, through the Pre-Release Program, or administratively by Central Classification Services (CCS).

a. Institutional referrals for ~~Local~~ DOC Jail Contract Work Release are made via established review procedures of the offender's eligibility and suitability. Administrators may refer offenders for review outside the annual review. Institutional recommendations are forwarded to CCS for final review. These recommendations should include: (changed 3/2/18)

i. Release Plan location

ii. Name and phone number of the prospective employer if this is determined to be necessary

iii. Current Progress Report

b. Sheriff/Jail Administrator referrals are written requests to the Director of Offender Management Services (OMS). Jails may request that state offenders, housed in a jail or a DOC institution, be

assigned to the jail for the purpose of work release. OMS staff administratively reviews the case with the final decision resting with the Director of Offender Management Services.

c. Parole Board referrals for ~~Local~~ DOC Jail Contract Work Release are made via letter to the Offender Management Services. CCS staff will administratively review the case and make an appropriate decision. Prior to approval, CCS will obtain a recommendation from the institution. (changed 3/2/18)

d. Administrative referrals may be made at any time by CCS in order to manage bed space. Prior to final approval, CCS will obtain a recommendation from the institution.

11. Work Release Agreements:

a. Jails are provided a *Work Release Program Manual* upon initial agreement and as needed when changes occur.

b. DOC/Jail Work Release Agreements, for Sheriff Requested placements, should be signed by the current Sheriff or Jail Administrator.

c. Offenders approved for ~~Local~~ DOC Jail Contract Work Release participation must review and sign the *Offender Work Release Agreement* 830_F2 prior to transfer to a jail. (changed 3/2/18)

12. Pre-Program Placement Counseling - Offenders approved for work release should be given individual counseling at the current location prior to transfer.

a. Offenders should be notified of the following:

   i. Offenders are governed by jail rules and regulations, not DOC operating procedures.

   ii. Offenders are responsible for paying their own medical costs while on work release.

   iii. Offenders, once placed at a jail, do not have the option to request transfer to a different jail. Transfers between jails will only be made when there is no available employment at the assigned jail or a keep separate situation exists.

   iv. Offenders may be returned to a higher security institution if removed from work release by the jail.

   v. Time will continue to be computed by DOC.

   vi. Offenders should be given a list of allowable personal property items for their assigned jail. Unauthorized property should be disposed of prior to transfer in accordance with Operating Procedure 802.1, *Offender Property*.

b. Counselors should assist the offender in obtaining necessary documents for employment, to include a valid Social Security Card (*Social Security Administration forms*) and Birth Certificate *(Office of Vital Records forms*). **In no case will an offender who is ineligible to work in the United States be transferred to work release.** Institutional staff will ensure that the *Virginia Criminal Justice Agency Offender Information Form* is completed. This form will be accepted by the Virginia Department of Motor Vehicles as a primary proof of residency and as a secondary proof of identity, so that offenders can obtain a DMV identification card.

c. The offender must submit to a drug test and test negative prior to transfer. Test results and date taken should be documented in the "Dummy" file.

13. Notifications - In accordance with COV §53.1-160, Central Classification Services will send a fifteen day written notification to the Sheriff, Chief of Police and Commonwealth's Attorney of the jurisdiction in which the work release facility is located. If an offender is transferred to another work release site, Central Classification Services will reissue the fifteen day notification to the new locality. Notifications shall also be made to the DOC Victim Services Unit who will initiate victim notifications in accordance with COV §53.1-160., B., iii. Offenders approved may be transferred any time after CCS approval; however, offenders should not be permitted to work in the community until fifteen calendar days have elapsed from the postmark of such notice.

14. Offender Records - Institution and medical "dummy" files shall be prepared in accordance with Operating Procedure 050.3, *Facility Release of Offenders*

15. Transfer Processing - All transfers to jail work release programs are coordinated through the Central

Transportation Section. Prior to transfer to a work release assignment, institutional staff should ensure that:

a. Property - Only property on the Jails' Allowable Personal Property list is sent with an offender to the jail. All other property should be disposed of in accordance with Operating Procedure 802.1, *Offender Property.*

b. Dummy Files - The "dummy" files are complete per Operating Procedure 050.3, *Facility Release of Offenders*.

c. Medications - Medical staff will provide a supply of medications in accordance with Operating Procedure 720.5, *Pharmacy Services*.

d. Transfer Clothing - Male offenders will be provided with, and transferred in, DOC standard release clothing, per Operating Procedure 050.3, *Facility Release of Offenders*, to include work boots or shoes appropriate for a work environment. Female offenders shall be released in the standard "blue" clothing (offenders may be released with personal tennis/athletic shoes or work boots).

e. Offender Funds - Offenders will be provided all funds credited to their Trust Account, per Operating Procedure 050.3, *Facility Release of Offenders*. Since offenders are not being released from incarceration, institutions DO NOT need to supplement offender funds to meet the $25.00 Discharge Allowance. A check, in the amount of funds currently available, will be made out to the receiving jail and be included in the offender's dummy file sent with the transporting officer. Any additional funds posted after the offender's release should be forwarded to the appropriate jail upon closure of the Trust Account.

16. Supervision

a. Offenders will be supervised by jail work release staff and will be required to abide by all rules, regulations and program criteria of the Jail. This includes job checks, drug screening, transportation to and from work, visitation, recreation, discipline, etc. as directed by jail staff.

b. Offender attendance at funerals or deathbed visits will be in accordance with Jail policies and procedures.

c. General care such as food, clothing, and routine health services will be provided in accordance with 6VAC15-40, *Minimum Standards for Jails and Lockups*.

17. Financial Obligations - Offenders participating in work release programs will be responsible for making payments from their work release wages to defray the cost of judicial or administrative support orders; fines, restitution, or costs as ordered by the Court; and expenses associated with work release supervision/programs in accordance with COV §53.1-131:

a. Offenders will be informed of fees associated with the above obligations by jail staff upon transfer to a work release program. Payment priorities, amounts to be applied, and methods of payment will be in accordance with local jail policies and procedures.

   i. Priority 1 - Meet the obligation of any judicial or administrative order to provide support and such funds shall be disbursed according to the terms of such order

   ii. Priority 2 - Pay any fines, restitution or costs as ordered by the court

   iii. Priority 3 - Pay travel and other such expenses made necessary by the offender's work release employment or participation in educational or rehabilitative programs, including the sums specified in COV §53.1-150

   iv. Priority 4 - Defray the offender's keep

b. The remaining balance will be credited to the offender's jail account.

18. Medical Services - Offenders will be provided with medical care in accordance with jail policies and procedures.

a. Routine medical care requires a co-payment, like in DOC institutions. Since offenders are working and receiving wages, many jails also require full payment for routine medical costs (i.e. doctor's visits, medications, etc.). Offenders will be informed of the jail policy upon arrival at the

jail.

    b. Emergency or critical medical care will be provided by the jail at the time of the occurrence. Jails should immediately notify the DOC Health Services Unit of such situations so that a determination can be made to retake the offender for continued medical care within the DOC and/or to provide reimbursement to the jail for medical costs incurred.

19. Parole Review/Progress Reports - Work release offenders with a parole eligibility date are subject to review by the Parole Board. Often, a satisfactory adjustment in work release status will result in Discretionary Parole Release prior to the offender's Mandatory Release Date.

    a. After four full months of satisfactory participation in work release, Jail staff, at their discretion, may submit a progress report to the Virginia Parole Board for review. A progress report to the Parole Board is not necessary for offenders that are not eligible for parole.

    b. If an offender is denied parole, Jail staff should immediately review the offender's suitability for continuation on work release. Offenders recommended for program removal will receive a due process hearing at the jail prior to return to the DOC. Transfer of offenders determined to be unsuitable for continuation in work release should be coordinated through the DOC Central Transportation Section.

20. Program Violations/Removals - Offenders who violate program rules and regulations, or commit a crime while on work release, will be removed from the program by the jail. Appropriate disciplinary and/or criminal proceedings will be implemented in accordance with established jail rules and regulations.

    a. Offenders removed from work release are not eligible to reapply for twelve months after the date of removal. If removed due to committing a new criminal offense while on work release, an offender is not eligible for consideration during the current incarceration per COV §53.1-62.

    b. Jails should immediately notify DOC Central Transportation Section of a program violation, so the offender can be scheduled for retake upon completion of any disciplinary hearing conducted by the jail.

    c. Documentation of the inappropriate behavior and any charges (disciplinary and/or criminal) should accompany the offender when returned to the DOC. Jails have the authority and are encouraged to reduce Class Levels when appropriate as part of the jail's disciplinary process.

    d. The receiving institution will conduct a formal due process review of assignment, security level, and Class Level, based on documentation received from the jail.

    e. Any wages received by the Jail after DOC retake will be forwarded to the offender's current DOC institution.

21. Release Processing - Jails will assist offenders who have been granted parole or are being released on a Good Time Release Date with release transportation if requested by the offender.

22. Appeals - Offenders may appeal decisions relating to the institution or Central Classification Services approval or disapproval for program participation through the established DOC offender grievance process. Appeals of Jail operation or supervision issues must be submitted via the Jail's established grievance process.

V. Offender Appeals

    1. An offender may appeal any final classification decision through the Offender Grievance Procedure.

    2. The ICA recommendation and the final approval are one issue and cannot be grieved separately.

## V. REFERENCES

Operating Procedure 050.3, *Facility Release of Offenders*

Operating Procedure 425.4, *Management of Bed and Cell Assignments*

Operating Procedure 425.4RH, *Management of Bed and Cell Assignments*

Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*

Operating Procedure 720.5, *Pharmacy Services*

Operating Procedure 720.7, *Emergency Medical Equipment and Care*

Operating Procedure 730.2, *Mental Health Services: Screening, Assessment, and Classification*

Operating Procedure 730.3, *Mental Health Services: Levels of Service*

Operating Procedure 735.2, *Sex Offender Treatment Services (Institutions*)

Operating Procedure 802.1, *Offender Property*

Operating Procedure 830.1, *Facility Classification Management*

Operating Procedure 830.2, *Security Level Classification*

Operating Procedure 830.6, *Offender Keep Separate Management*

Operating Procedure 841.1, *Offender Programs and Services*

Operating Procedure 841.3, *Offender Religious Programs*

Operating Procedure 841.4, *Restrictive Housing Units*

Operating Procedure 861.1, *Offender Discipline, Institutions*

Operating Procedure 861.3, *Special Housing*

~~Operating Procedure 864.1, *Offender Grooming and Hygiene*~~ (deleted 7/1/19)

VI.   FORM CITATIONS

*Intra-Regional Transfer Authorization* 050_F8

*Interdepartmental Transfer Notice (CA4)* 050_F9

*Electronic Notification of Mental Health Offender Transfer* 730_F11 (added 1/16/18)

*Mental Health Serious Mental Illness (SMI) Determination* 730_F34 (added 1/16/18)

*Offender Work Release Agreement* 830_F2

*Offender Case Analysis for Steps to Achieve Reintegration (STAR) Program* 830_F5

*Steps to Achieve Reintegration (STAR) Program - Mental Health Review* 830_F6

*Protective Custody Release and Refusal* 830_F7

*Shared Allied Management (SAM) Unit Admission Screening* 830_F8 (added 1/16/18)

*Shared Allied Management (SAM) Unit Contract* 830_F9 (added 1/16/18)

*Assignment to Secure Diversionary Treatment Program* 830_F10 (added 1/16/18)

*Mental Health Clinical Supervisor - External Review* 830_F11 (added 1/16/18)

*Transitional Work Release Offender Agreement* 830_F12 (added 8/1/19)

~~*Employer's Community*~~ *Transitional_Work_Release_Employer_Agreement* 830_F13 (added 8/1/19, <u>changed 12/1/19</u>)

*Transitional Work Release Employment Assignment* 830_F14 (added 8/1/19)

VII.   REVIEW DATE

The office of primary responsibility shall review this operating procedure annually and re-write it no later than three years after the effective date.

*The office of primary responsibility reviewed this operating procedure in March 2018 and necessary changes have been made.*

*The office of primary responsibility reviewed this operating procedure in March 2019 and necessary changes are being drafted.*

*Signature Copy on File*                    *2/1/17*

A. David Robinson, Chief of Corrections Operations        Date

VIRGINIA DEPARTMENT OF CORRECTIONS

DOC Location: Wallens Ridge State Prison
Report generated by Collins, S
Report run on 06/24/2020 at 03:13 PM



# Institutional Classification Authority Hearing Notification Form

D-620

| Offender Name: Woodhouse, Vincent L | DOC#: 1031027 | DOC Location: Wallens Ridge State Prison |

## Part I: ICA Referral Notice

Classification Action being reviewed:

Comments: 212 - Threatening bodily harm to any person verbally- by gesture- or actions -or (02/17/2016 - 12/31/9999)

You will be scheduled to appear before the Institutional Classification Authority on or after 6/29/2020

Authorizing Staff    *G. R. Ly*    Date & Time    *6-24-2020    3:20 pm.*

A formal due process hearing is required when an offender is considered for removal from general population, or faces the possibility of increase in security level or reduction in good time earning level outside the Annual Review Cycle. You will be permitted to: 1) Be present at the hearing  2) Remain silent  3) Know the reasons for any decisions rendered by the ICA  4) Have your counselor or an employee present to assist you 5) Receive a copy of the written findings and recommendations of the ICA. During hearings based solely on documented Disciplinary Hearing Referrals the following is not afforded to you: 1) Hearing the Reporting Officer's testimony 2) Cross-examining adverse witnesses 3) Calling and cross-examining witnesses.

This is to certify that I have received a copy of this notice and it was explained to me. I am requesting witness/s to appear on my behalf.

Witness Request:    1_____    2_____    3_____

**I Waive rights to 48-hour notice.** ☐ Yes ☐ No          **I wish to attend.** ☐ Yes ☐ No

_____    *6-24-20*          _____    *6-24-20*
Offender Signature              Date                    Witness Signature              Date

**ENCLOSURE C**



VIRGINIA DEPARTMENT OF CORRECTIONS

## Institutional Classification Authority Hearing

DOC-11H
DOC Location: Wallens Ridge State Prison
Report generated by Hubbard, K C
Report run on 05/28/2021 at 10:12 AM

---

**Offender Name: Woodhouse, Vincent L**     **DOC#: 1031027**     **DOC Location: Wallens Ridge State Prison**     **Bed Assignment: A-4-411-B**

---

### Part I: ICA Referral Notice

You were scheduled to appear before the Institutional Classification Authority on or after 06/29/2020 for Internal Status

Comments: 212 - Threatening bodily harm to any person verbally- by gesture- or actions -or (02/17/2016 - 12/31/9999)

Authorizing Staff           Date & Time

Hearing Date: 6/30/2020

Offender Statement: It was over the barber job. He went to his cell and I went to mine. Next thing I know, I'm coming to seg.

Reporting Staff Comments: RHU Status- Offender needs to remain infraction free, maintain cell compliance, and complete RH journals as needed.

### Part II: Hearing Disposition

**Internal Status Review:**

The ICA recommends: Internal status change to RHU

Rationale: RHU Status- Offender needs to remain infraction free, maintain cell compliance, and complete RH journals as needed.

ICA: Carico, Jonathan W           Date: 7/7/2020

---

**Administrative Review:**

Decision: Approve           Internal status change to RHU

Foreman, Tanya S           Date: 7/13/2020

Comments: Approve RHU status

VIRGINIA DEPARTMENT OF CORRECTIONS

$D620$

DOC-11G
DOC Location: Wallens Ridge State Prison
Report generated by Caughron, S A
Report run on 06/30/2020 at 01:01 PM

## Institutional Classification Authority Hearing Notification Form

| Offender Name: Woodhouse, Vincent L | DOC#: 1031027 | DOC Location: Wallens Ridge State Prison |
|---|---|---|

### Part I: ICA Referral Notice

Classification Action being reviewed:

Comments: Notice of 10-Day MDT Review.

You will be scheduled to appear before the Institutional Classification Authority on or after 7/7/2020

Authorizing Staff                         Date & Time

A formal due process hearing is required when an offender is considered for removal from general population, or faces the possibility of increase in security level or reduction in good time earning level outside the Annual Review Cycle. You will be permitted to: 1) Be present at the hearing 2) Remain silent 3) Know the reasons for any decisions rendered by the ICA 4) Have your counselor or an employee present to assist you 5) Receive a copy of the written findings and recommendations of the ICA. During hearings based solely on documented Disciplinary Hearing Referrals the following is not afforded to you: 1) Hearing the Reporting Officer's testimony 2) Cross-examining adverse witnesses 3) Calling and cross-examining witnesses.

This is to certify that I have received a copy of this notice and it was explained to me. I am requesting witness/s to appear on my behalf.

Witness Request:     1_____     2_____     3_____

I Waive rights to 48-hour notice.     ☐ Yes ☐ No          I wish to attend.     ☐ Yes ☐ No

_Refused to Sign_ _____          _Caughron_ _____ 7/1/2020
Offender Signature          Date          Witness Signature          Date

Rev. 04/15/2010



VIRGINIA DEPARTMENT OF CORRECTIONS

## Institutional Classification Authority Hearing

DOC-11H
DOC Location: Wallens Ridge State Prison
Report generated by Hubbard, K C
Report run on 05/28/2021 at 10:10 AM

**Offender Name: Woodhouse, Vincent L**    **DOC#: 1031027**    **DOC Location: Wallens Ridge State Prison**    **Bed Assignment: D-6-620-B**

## Part I: ICA Referral Notice

You were scheduled to appear before the Institutional Classification Authority on or after 07/07/2020 for Internal Status

Comments: Notice of 10-Day MDT Review.

Authorizing Staff          Date & Time

Hearing Date: 7/6/2020

Offender Statement:

Reporting Staff Comments: Release to General Population pending bed space. Offender is not viewed as a threat at this time.

## Part II: Hearing Disposition

**Internal Status Review:**

The ICA recommends: Internal status change to General Population

Rationale: Release to General Population pending bed space. Offender is not viewed as a threat at this time.

ICA: Carico, Jonathan W        Date: 7/7/2020

**Administrative Review:**

Decision: Approve        Internal status change to General Population

Foreman, Tanya S        Date: 7/13/2020

Comments: Release to general population



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

**Informal Complaint**
WALLENS RIDGE STATE PRISON

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| | | |
|---|---|---|
| Woodhouse, Vincent | 1031027 | A 412 |
| Offender Name | Offender Number | Housing Assignment |
| | | 8/17/20 |
| Individuals Involved in Incident | | Date/ Time of Incident |

☑ Unit Manager/Supervisor ☐ Food Service ☐ Institutional Program Manager
☐ Personal Property ☐ Commissary ☐ Mailroom
☐ Medical Administrator ☐ Other (Please Specify): _____

Briefly explain the nature of your complaint (be specific):

*Prison officials acted w/ deliberate indifference to my safety when I was housed with A. phillips 1160064 despite the fact A. phillips was previously convicted of threatening bodily harm to my person on 6/24/20. And on 8/17/20 A. phillips sucker pushed me while I had my headphones on. I received sketches and other medical care. My headphones were broken. I would like to sit down with the unit manager to replace my headphones.*

Offender Signature _____ Date 8/17/20

**Offenders - Do Not Write Below This Line**

Date Received: 08-18-2020                    Tracking # WRSP-20-INF-0203?

Response Due: 09-02-2020                    Assigned to: Unit Mgr J. Stallard

Action Taken/Response:

*Upon arriving in A-4 housing unit, you told my Lt. and myself that you have no issues being housed in the same pod with offender phillips.*

J. Stallard          J. Stallard  UM          8/21/20
Respondent Signature          Printed Name and Title          Date

**WITHDRAWAL OF INFORMAL COMPLAINT:**

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____          Date: _____
Staff Witness Signature: _____          Date: _____

Revision Date: 4/28/17

**ENCLOSURE D**

#23-627

VIRGINIA
DEPARTMENT OF CORRECTIONS

# REGULAR GRIEVANCE

WRSD20 R&S
Log Number: 00326

| Woodhouse, Vincent | 1031027 | A | A412 |
|---|---|---|---|
| Last Name, First | Number | Building | Cell/Bed Number |
| | 8/17/20 | | |
| Individuals Involved in Incident | Date/Time of Incident | | |

**WHAT IS YOUR COMPLAINT?** (Provide information from the informal process: Attach Informal Complaint response or other documentation of informal process.) Unit Manager J Stallard acted with deliberate indifference and reckless disregard to my safety when he rehoused me with A. phillips 1160004. Despite the fact A. phillips was convicted of threatening bodily harm to my person, and taken to Restrictive housing on 6/24/20. He was ~~later~~ released from Restrictive housing and placed back in the same housing unit (A4). On 8/17/20 A. phillips punched me in my face 3 times, I was knocked unconscious, I later recieved stitches ~~~~ above my eye and in my lip. Stallard "essentially orchestrated the attack" by housing me with A. phillips. My head-phones were broken during the assault.

**What action do you want taken?** I want my head phones replaced and phillips placed on my Keep seperate. Respectfully Submitted.

| Grievant's Signature: | Date: |
|---|---|

Warden/Superintendent's Office:

RECEIVED GRIEVANCE DEPT.

Date Received:

SEP 0 3 2020

**ENCLOSURE E**

WALLENS RIDGE STATE PRISON

1 of 2

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

**Offender Grievance Response - Level I**

866.1 A-6

DOC Location: WRSP Wallens Ridge State Prison

Report generated by Ravizee, B J

Report run on 09/28/2020 at 02:38 PM

| Offender Name | DOC# | Location | | Grievance Number |
|---|---|---|---|---|
| Woodhouse, Vincent L | 1031027 | **Current** | Wallens Ridge State Prison | WRSP-20-REG-00356 |
| **Housing** | | **Filed** | Wallens Ridge State Prison | |
| D-1-104-B | | | | |

LEVEL I:    WARDEN/SUPERINTENDENT'S RESPONSE    (To be completed and mailed within 30 calendar days)

Grievance Summary:  In your grievance, you state Unit Mgr. Stallard acted with deliberate indifference to your safety when you were again housed with A. Phillips #1160004, despite he was previously convicted of threatening bodily harm to your person on 6-24-2020. You state on 8-17-2020, A. Phillips punched you three times in the face while you had your headphones on.  Your headphones were broken. You received stitches and other medical care.

As a result of this grievance, you would like (the following action taken) replace your headphones and offender Phillips placed on keep separate.

Results of the Informal Process: You submitted Informal Complaint WRSP-20-INF-02033. Unit Mgr. Stallard responded upon arriving in A-4 housing unit, you told my Lt. and myself that you have no issues being housed in the same pod with offender Phillips.

Investigation: Investigation into your complaint determined on 6-24-2020 offender Phillips was charged with a 212 for threatening bodily harm towards you. Documented enemy situations are checked before cell assignments are made. You were released to general population and assigned to A-412 on 7-8-2020. Unit Mgr. Stallard reported that you told him and Lt. Fields that you did not have any issues being housed in the same housing unit with offender Phillips.  On 8-17-2020, offender Phillips struck you during pod recreation. He was charged with a 239B. After this incident, offender Phillips was placed on your keep separate list. Medical reported that you did have injury to eye and lip, and received sutures on 8-17-2020.  You were seen on 8-26-2020, healed no infection. There was no notation regarding being knocked out in medical chart.

Procedure: Operating Procedure 830.6 governs this issue.

In accordance with the above information, this grievance is deemed **unfounded**.  No further action appears to be necessary at this time.

If you are dissatisfied with the Level I response, you may appeal within 5 calendar days to:

Regional Admin. 5427 Peters Creeks Road-Suite 350, Roanoke, VA  24019-3891

| | |
|---|---|
| Warden/Superintendent | Date 9/30/2020 |

I wish to appeal the Level I response because:

my headphones were broken as a result of prison officials putting me back in the pod with A. phillips after he threatened to do bodily harm. They essentially orchestrated the attack. I want my headphones replaced.

| | |
|---|---|
| Offender Signature | Date 10/3/2020 |

VIRGINIA
DEPARTMENT OF CORRECTIONS

*Inmate Office*
*Grievance* Regular Grievance 866_F1_4-17

# REGULAR GRIEVANCE

WRSP20 R&8
Log Number: 00326

| WoodHouse, Vinnet | 1031027 | A | A412 |
|---|---|---|---|
| Last Name, First | Number | Building | Cell/Bed Number |
| | 8/17/20 | | |
| Individuals Involved in Incident | Date/Time of Incident | | |

**WHAT IS YOUR COMPLAINT?** (Provide information from the informal process: Attach Informal Complaint response or other documentation of informal process.) Unit Manager J Stallard acted with deliberate Indifference and reckless disregard to my safety when he re-housed me with A. phillips 1160004, despite the fact A. phillips was convicted of threatening bodily harm to my person, and taken to Restrictive housing on 6/24/20. ~~he was also~~ He was released from Restrictive housing and placed back in the same housing unit (A4) On 8/17/20 A. phillips punched me in my face 3 times, I was knocked unconscious, I later recieved stitches ~~arove~~ above my eye and in my lip. Stallard "essentially orchestrated the attack" by housing me with A. phillips. My head-phones were broken during the assault.

**What action do you want taken?** I want my head phones replaced and phillips placed on my Keep seperate. Respectfully Submitted.

Grievant's Signature:

Date:

RECEIVED
OCT 06 2020
OMBUDSMAN SERVICE UNIT
WESTERN REGION

RECEIVED GRIEVANCE DEPT.
Warden/Superintendent's Office:

Date Received:
SEP 03 2020

WALLENS RIDGE STATE PRISON

1 of 2

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

## Offender Grievance Response - Level II

866.1 A-7

DOC Location: WRO Western Regional Office

Report generated by Paderick, K

Report run on 10/14/2020 at 11:58 AM

| Offender Name | | DOC# | Location | | Grievance Number |
|---|---|---|---|---|---|
| Woodhouse, Vincent L | | 1031027 | **Current** | Wallens Ridge State Prison | WRSP-20-REG-00356 |
| **Housing** | | | **Filed** | Wallens Ridge State Prison | |
| D-1-104-B | | | | | |

LEVEL II: REGIONAL DIRECTOR, HEALTH SERVICES DIRECTOR OR CHIEF OF OPERATIONS FOR OFFENDER MANAGEMENT SERVICES RESPONSE (To be completed and mailed within 20 calendar days)

Your grievance appeal has been reviewed along with the response from the Level I respondent and your original complaint.

Based on the information provided, I am upholding the decision of the Level I respondent, which has determined that your grievance is **unfounded**. I find no violation of policy.

In accordance with Operating Procedure 866.1, Offender Grievance Procedure, this is your **last level** of appeal. You have exhausted all administrative remedies.

| Regional Administrator | | Date |
|---|---|---|
| *[signature]* | | 10/22/2020 |