IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VINCENT WOODHOUSE, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:20cv00655 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MAJOR KING, JOSEPH ELY, and ) | By:   Hon. Thomas T. Cullen |
| UNIT MANAGER STALLARD, ) | United States District Judge |
| ) | |
| Defendants. ) | |

Plaintiff Vincent Woodhouse ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action against Defendants Major King, Joseph Ely, and Unit Manager Stallard (collectively "Defendants"), alleging that they failed to keep him safe from another inmate at Wallens Ridge State Prison ("Wallens Ridge"), resulting in a physical altercation that left him bloodied and scarred. This matter is now before the court on Defendants' motion for summary judgment. For the reasons discussed below, the court will grant summary judgment to Ely and Stallard but deny summary judgment to King.

I.

The facts are taken from Plaintiff's verified complaint and a video of the attack at issue. Ordinarily, a party may not rely solely on the allegations in his complaint to defeat summary judgment. *See, e.g.*, *DePaola v. Ray*, No. 7:12cv00139, 2013 WL 6055253, at *2 (W.D. Va. Nov. 15, 2013). But a *pro se* litigant's verified complaint is considered an affidavit and may defeat a motion for summary judgment when the assertions in that verified complaint are based on

personal knowledge and relate to a dispute of material fact. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

According to Plaintiff, Defendants are all part of the Multi-Disciplinary Team ("MDT") at Wallens Ridge. (Compl. ¶¶ 4–6 [ECF No. 1].) "The MDT are responsible to review offenders in restrictive housing and make decisions for housing status." (*Id.* ¶ 4.)

In 2017, while Plaintiff was housed at Red Onion State Prison, a special investigator with the Virginia Department of Corrections ("VDOC") determined that it was "likely" that Plaintiff has been labeled a "snitch" by the Bloods "due to his involvement and statements in a court case." (Compl. ¶ 8; *id.* Encl. A [ECF No. 1-1].) As a result, Plaintiff was "a candidate to be considered for protective custody or out-of-state transfer." (*Id.* ¶ 8 & Encl. A.) Plaintiff was later transferred to Wallens Ridge in November 2018, where the MDT placed him in general population. (*Id.* ¶ 9; Aff. of J. Stallard ¶ 4, June 4, 2021 [ECF No. 27-2].)

On June 24, 2020, Plaintiff was "involved in a[n] argument with Offender Anwar Phillips, after Offender [P]hillips accused [Plaintiff] of being a snitch." (*Id.* ¶ 10.) Both Plaintiff and Phillips were restrained and removed from the unit and placed in restrictive housing. (*Id.*)

In July, the MDT decided to put both Plaintiff and Phillips back into general population and in the same housing unit. (*Id.* ¶ 12.) "After the MDT meeting, [Defendant] Major King did a round upstairs then downstairs and when he finally got to [Plaintiff's] door, [h]e stated 'I'm sending you and [P]hillips back to A4 for round two.' He then laughed and walked away." (*Id.* ¶ 13.)

After returning to the housing unit, Defendant Stallard called Plaintiff out of his cell. Stallard said to Plaintiff: "[Y]ou and [P]hillips better learn how to get along. I don't want no shit out of y'all again." (*Id.* ¶ 14.)

Approximately one month later, on August 17, 2020, Phillips attacked Plaintiff.[1] On the video of the incident, Plaintiff is seen near his cell (A412) in a white t-shirt, talking with another inmate. At approximately 10:40:03, Phillips approaches Plaintiff and the two have an occasionally animated conversation. At 10:41:12, Phillips punches Plaintiff in the face, knocking Plaintiff to the floor. Phillips advances on Plaintiff and appears to strike him a second time while he is on the floor. (*See* Aff. of C. King ¶ 5, June 4, 2021 [ECF No. 27-1].) He stands over him for a moment, before walking away at 10:41:21. Plaintiff stands up and uses his shirt to wipe his face. At 10:42:10, blood is visible on his white t-shirt. Phillips returns occasionally, appearing to speak to Plaintiff, but there is no further physical altercation.

According to Plaintiff, his upper lip and left eyebrow were both "split in half." (Compl. ¶ 15.) He received stitches above both his lip and eye, and he has permanent scars in both places. He also says he suffers from "headaches, paranoia[,] and blurred vision." (*Id.*)

---

[1] The altercation at issue is captured on video footage provided by Defendants, which Plaintiff does not dispute. (*See* Aff. of J. Light Encl. A, June 7, 2021 [ECF Nos. 27-3 & 29].) That footage contradicts Plaintiff's version of events. Normally, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. . . . [T]his usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Rather, when the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," the court should "view[ ] the facts in the light depicted by the videotape." *Id.* at 380–81.
    Plaintiff alleges that Phillips punched him in the face "repeatedly" while he was "listening to [his] headphones and drinking coffee." (Compl. ¶ 15.) He also alleges that he lost consciousness during the attack and, "when [he] regained consciousness [he] was on the floor with blood everywhere." (*Id.*) The video fatally undermines those allegations, which the court will not credit. Accordingly, the court adopts the facts that are evident on the video.

On November 6, 2020, Plaintiff sued Defendants in this court, alleging that they were deliberately indifferent to his safety, in violation of the Eighth Amendment. Defendants moved for summary judgment on June 14, 2021 (ECF No. 26), and Plaintiff filed an opposition on June 28 (ECF No. 30).

## II.

Federal Rule of Civil Procedure 56(a) provides that a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on speculation to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252; *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir.

1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly rejected inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Under 42 U.S.C. § 1983, an individual may sue state officials to vindicate a violation of his constitutional rights. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Plaintiff brings this suit under § 1983, alleging a single violation of his Eighth Amendment rights by each Defendant.

The Eighth Amendment prohibits cruel and unusual punishments. Although the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), "neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Constitution thus requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). And, in particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988) (Breyer, J.).

Prison officials violate the Eighth Amendment "only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). That means that the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Whether a prison official knew of a substantial risk is a question of fact that may be shown by inference from circumstantial evidence or by "the very fact that the risk was obvious." *Id.* at 842. Deliberate indifference "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). But "even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" *Scinto v. Stansberry,* 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer,* 511 U.S. at 844). And where a court determines that a plaintiff has failed to satisfy the objective prong on the analysis, it "need not consider whether [the defendants] acted with an intent sufficient to satisfy the [Eighth] Amendment's state-of-mind requirement." *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir. 1993).

Although Defendants summarily "dispute that [Plaintiff's] medical records support that he sustained a sufficiently serious injury for purposes of the objective prong," (Defs.' Mem. in Supp. of Mot. for Summ. J. pg. 7, June 14, 2021 [ECF No. 27]), they do not offer any argument

on the objective prong. On summary judgment, the court cannot credit this allegation devoid of any supporting case law and finds that, for purposes of the present motion, Plaintiff's injuries were, objectively, sufficiently serious. The only remaining question is whether Defendants knew of and disregarded an excessive risk to Plaintiff's safety.

### A.

As to Defendants Ely and Stallard, Plaintiff has not shown that they were aware of an excessive risk to his safety. At most, Plaintiff has shown that Ely and Stallard were aware that, while at Red Onion State Prison, it was recommended that Plaintiff be placed in protective custody or transferred out of state and that he had a verbal altercation with another inmate.

These facts, standing alone, do not show that Ely and Stallard were aware of a risk of future violence between Plaintiff and Phillips. Notably, there is no indication that either Ely or Stallard was aware that Phillips had called Plaintiff a "snitch" during their prior encounter, a fact that may have alerted them (given the prior, documented concerns at Red Onion) to an unresolved issue between Phillips and Plaintiff. And Plaintiff does not allege that he ever expressed any concerns about being re-housed with Phillips after their prior encounter. These are not facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed] . . . ." *Farmer*, 511 U.S. at 837.

While the discretion afforded prison officials when it comes to where to house inmates is not limitless, it is broad. *See, e.g.*, *Martin v. Stokes*, C/A No. 8:17-3391, 2017 WL 6888826, at *2 (D.S.C. Dec. 20, 2017) ("The placement and assignment of inmates into particular . . . unites by state or federal corrections departments are discretionary functions, and those decisions are not subject to review *unless* state or federal law places limitations on official discretion.").

Plaintiff has failed to present evidence to suggest, let alone establish, that Ely or Stallard were aware of a risk that Phillips would attack Plaintiff. Accordingly, they are entitled to summary judgment.

**B.**

The same is not true of Major King. As alleged, after Plaintiff was returned to the housing unit, King approached Plaintiff and said, "I'm sending you and [P]hillips back to A4 for round two." (Compl. ¶ 13.) Such a statement evidences an awareness that Phillips and Plaintiff might continue to fight, and that Phillips consciously disregarded this possibility. Moreover, unlike Ely and Stallard, King admits he was aware of *some* of the prior altercation's content. He knew that Phillips told Plaintiff, "You're the biggest pussy on the mountain, come out of that cell and I'll fuck you up pussy bitch," and "Don't press up on me or I'll have to teach you some manners!"[2] (Aff. of C. King ¶ 7, Encl. C & D, June 4, 2021 [ECF No. 27-1].) The combination of King's membership on the MDT, his awareness of Plaintiff's potential labeling as a snitch, his direct knowledge of the comments made between Plaintiff and Phillips, and his statement to Plaintiff about "round two," combine to create a genuine issue of material fact as to whether a jury could conclude that King was aware of a risk to Plaintiff's safety and that he disregarded that risk. Accordingly, summary judgment is improper, and Defendants' motion will be denied as to the claim against King.

---

[2] There is no basis in the present record to conclude that Ely and Stallard were aware of the contents of the disciplinary charges levied against Plaintiff and Phillips following their first encounter. But King references the documents in his declaration, so the court assumes he was aware of the allegations at the time.

### IV.

Because there is no basis to conclude that Defendant Ely or Stallard disregarded a known risk to Plaintiff's safety, they are entitled to summary judgment. But there is a genuine dispute of material fact regarding Defendant King's awareness of a substantial risk to Plaintiff's safety. As such, King's motion for summary judgment will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 28th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE